Commonwealth *v.* Strobel, Appellant.

Argued March 31, 1954. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Lee C. McCandless,* for appellant.

*Robert B. Greer, Jr.,* with him *Randolph C. Ryder,* Deputy Attorney General and *Frank F. Truscott,* Attorney General, for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 25, 1954:

This is the second time this case has been before us. It is an appeal from the suspension of a motor vehicle operator's license by the Secretary of Revenue. The case was remanded for further proceedings in our opinion reported in 375 Pa. 292, 100 A. 2d 43.

In *Commonwealth v. Emerick*, 373 Pa. 388, 96 A. 2d 370, we construed The Vehicle Code. On appeals the hearings are *de novo*. Where there is disputed or conflicting testimony and there exist extenuating facts and circumstances, the hearing judge is required to make independent findings of fact and exercise his discretion whether or not a suspension should be decreed.

That appellant exceeded the legal speed limit and was fined is undisputed. Whether or not, under all the existing circumstances, appellant should suffer the further penalty of the suspension of his operator's license is now before the Court. There is conflicting testimony concerning the rate of speed at which appellant was driving. The testimony, however, does not sufficiently indicate all the facts and surrounding circumstances. There is no description of the road and adjacent area at the place of violation, the then existing traffic conditions and the manner in which appellant, a testing automobile mechanic, was operating the vehicle.

The learned judge who heard this case filed no findings of fact as directed and is no longer upon the bench. In the interest of justice the case is remanded for a rehearing *de novo*, with directions to the hearing judge to make findings of fact and exercise his discretion in determining whether or not a suspension should be decreed.

Order reversed and case remanded for further proceedings in accordance with this opinion.

DISSENTING OPINION BY MR. JUSTICE BELL:

I cannot see any justification (a) for reversing the Order of the Court below which suspended defendant's operating license for a period of 90 days, or (b) for remanding the case for findings of fact which have already been made by the trial Judge.

The law is now well settled that a hearing before a Court of Common Pleas on the question of suspension of a driver's license is de novo and where there is disputed and conflicting testimony, or extenuating facts and circumstances are alleged, the trial Judge (1) should make findings of fact, and (2) should exercise his discretion whether or not to suspend the defendant's operating license: *Com. v. Emerick*, 373 Pa. 388, 96 A. 2d 370,* and cases therein cited.

The Court said in that case (pp. 397, 399, 400): "Where the testimony of the Commonwealth is *disputed* and there is credible conflicting testimony, the hearing judge must make findings of fact, and exercise his discretion concerning suspensions. If the testimony supports such findings, his discretion will not be disturbed. And if the testimony so taken de novo is *undisputed,* but there are submitted to him extenuating facts and circumstances, such as, inter alia, inadvertence, emergency, unintentional or accidental violations, including, among other reasons, economic hardship, if adequately supported by the testimony, the exercise of the hearing judge's discretion will not be

---

* The Court said in that case (p. 395): "In such de novo hearing neither the action of the Secretary nor the testimony taken before him, or his representative, is properly a part of the record in the court of common pleas. . . . (p. 396) nevertheless the exercise of his discretion, if made in accordance with the provisions and spirit of the statute, is entitled to consideration. . . ." How the Secretary's exercise of discretion can be entitled to consideration when his action is not properly a part of the record in the Court of Common Pleas is something which I cannot understand.

disturbed. . . . '. . . the action of the lower court will not be disturbed on appeal except for manifest abuse of discretion.' . . . The learned court below set aside the suspension of the operator's license and restored same *solely* upon the ground of economic hardship. The court said in its order: '[It] would work an undue hardship upon the defendant and his family, in that he is a steel worker with no other practical means of obtaining transportation to this employment and that in his spare time and in that in his off hours he aids his father-in-law in his delivery service, the appeal of the defendant is allowed and the suspension of his operator's license is set aside and the same restored to him.' This constitutes a manifest abuse of discretion by the hearing judge. Every time a person is convicted of a crime and is sentenced to prison, he and his family doubtless suffer an economic loss. But this constitutes no excuse for defendant's wrongdoing. . . . Economic hardship standing alone is insufficient to excuse such a violation."

In the *Emerick* case the defendant, a steel worker, drove at a speed up to 80 miles an hour, where the speed limit was 50 miles an hour. In spite of the fact that defendant had no other practical means of obtaining transportation to his place of employment, and the suspension of his license would work a great and undue hardship upon him and his family, this Court reversed the order of the Court below which had restored his license.

In *Com. v. Greer*, 373 Pa. 400, 96 A. 2d 376, defendant, a mechanic in a machine shop, drove his car 80 miles an hour on a public highway (where the speed limit was 50 miles an hour) at 7:30 o'clock P.M. daylight time, when the evening was clear and the road dry. In spite of the fact that defendant used his car for transportation to his machine shop and that sus-

pension would work a great economic hardship on him and his family, this Court reversed the lower Court's restoration of defendant's license.

In *Com. v. McCullough*, 373 Pa. 402, 96 A. 2d 377, this Court again reversed the lower Court and sustained the suspension of license by the Secretary where defendant, a telegraph operator, was driving 80 miles an hour (where the speed limit was 50 miles an hour) in spite of the fact that it would be *impossible* for defendant to get to his place of employment during the time his license would be suspended and that this would work a great and undue hardship on him and his family.

In *Com. v. Matil*, 373 Pa. 404, 96 A. 2d 380, defendant, a truck driver, operated his car at 70 miles an hour in moderate or light traffic, and in spite of the fact that the operator's license was necessary to enable him to get to and from his place of employment and the suspension would cause great economic hardship upon him and his family, this Court again reversed the order of the Court below, which had restored the license which the Secretary had suspended.

In *Com. v. Cornetti*, 373 Pa. 407, 96 A. 2d 378, this Court again reversed the Court below where the facts were exactly the same as in *Com. v. Matil*, supra.

In *Com. v. Roher*, 373 Pa. 409, 96 A. 2d 382, the operator traveled on a public highway at 70 miles an hour. He was a married man with children and would be unable to operate his business without a driver's license. Nevertheless, this Court reversed the lower Court's order which had restored defendant's license.

In *Com. v. Starcher*, 373 Pa. 411, 96 A. 2d 383, the defendant was traveling 70 miles an hour and again this Court reversed the order of the Court below which had restored the license on the ground of economic hardship.

In *Com. v. Gaiser*, 373 Pa. 413, 96 A. 2d 379, defendant was operating his car on a public highway at

*65* miles an hour at a place where, as in all the cases hereinabove mentioned, the maximum speed limit was 50 miles per hour. His place of employment was 48 miles away from his home. He was the sole support of his wife, children and family. It would be extremely difficult for him to get to and from his employment and a suspension would work an undue hardship on him and his family. Nevertheless, this Court again reversed the Court below which had revoked the Secretary's order of suspension of license.

The facts in the instant case present a stronger case for suspension of license than any of the cases hereinabove mentioned. In this case the defendant was an automobile repair man. The owner of an automobile told him that his car shimmied at 70 miles per hour, so defendant took the car out to test it. It was daylight and the highway was dry. He was clocked on Route 422, a three lane highway, at *70 to 90* miles per hour through light traffic. *He also drove through a 35 mile per hour zone at 55 miles an hour.* Defendant admitted that he drove at a speed of 65 miles per hour. He had a wife and two children and, as in most of these cases, he had never been arrested before. Unlike the defendants in a number of the cases hereinabove cited, this defendant obviously could still work as a mechanic in the garage even though he could not test cars during the suspension of his license. The Secretary suspended his license for 90 days. Defendant contended that the speed laws should not apply to a mechanic who is testing a car for shimmying at 70 miles per hour, although neither he nor the majority of this Court can point to any such express or implied exception in the statute, and this Court has no right or power to rewrite an Act of the Legislature.

When we daily see, hear and read about the accidents which are taking such a toll of life and limb

throughout Pennsylvania and other States, it seems obvious that the Court's forgiveness of 90 mile speed violations is an invitation or encouragement of speeding, the inevitable result of which will be a multiplication of accidents and deaths. A tester who drives 90 miles an hour can kill people just as easily as any other operator who drives 90 miles an hour. What is the use of the daily pleas and warnings by municipal, state and federal authorities and by newspapers and radios to drive carefully and obey the speed laws? What is the use of all of the hue and cry about the scores of thousands who are injured or killed on our highways by reckless driving or speeding, if the Supreme Court of Pennsylvania is going to let off a man (1) who drives 55 miles per hour through a 35 miles per hour speed zone, and then (2) wilfully and flagrantly violates our speed laws by driving *through traffic at 70 to 90 miles per hour*? I just cannot understand such a viewpoint!

The majority in its Opinion remands this case and orders a trial de novo, because the trial Judge made no findings of fact. If no findings had been made it would be at most harmless error, because defendant's admissions made a suspension of his license imperative! However, the Court below did make findings of fact which were more than adequate to support its decision in this case.: "Discussion. In this case we have the defendant traveling at a speed *over fifty-five miles in a thirty-five speed zone* and traveling *seventy to ninety miles*\* per hour on a highway where the legal speed limit is fifty miles per hour. The only excuse offered by the defendant was that he was testing the automobile because he was told by the owner of the car that it shimmied at seventy miles per hour. . . . The

---

\* Italics throughout, ours.

defendant admitted he was driving the automobile beyond the speed limit allowed by law, therefore there was no extenuating circumstances, inadvertence, emergency, unintentional or accidental violation."

Under the evidence in this case, the trial Judge's aforesaid findings of fact, which were amply sustained by all the evidence, were adequate and controlling; and the Order of the lower Court suspending defendant's license was supported by all the decisions of this Court.

We have held several times that the suspension of a license for exceeding the speed limit is not mandatory but discretionary with the Secretary of Revenue and with the lower Courts.* We have also repeatedly held that economic hardship alone is not a sufficient ground for failure to suspend * or for restoration of a license, but we have never said what are sufficient grounds for suspension. The net result is a contrariety of rulings throughout the lower Courts of this Commonwealth and a multiplicity of appeals to this Court. I agree with the Secretary of Revenue and the Attorney General and trial Judges that in order to obtain consistent, as well as just decisions in this class of case and to avoid the confusion which prevails throughout the Commonwealth on this subject, this Court should give the lower Courts some additional standards to guide them. In any event, the action of the majority of this Court in reversing the order of the Court below, which suspended this defendant's license, is in my opinion absolutely unjustifiable; and I would therefore affirm the order of the Court below.

---

* The distinction between the suspension and revocation of a license was pointed out in *Brennan's Case*, 344 Pa. 209, 25 A. 2d 155. It has been the practice of the Secretary of Revenue, in order to alleviate hardship cases of suspension, to issue a restricted license for business purposes only.