## Moes Appeal

*Emanuel H. Klein,* for appellant.

*Smith & Mountenay,* for Commonwealth.

SATTERTHWAITE, J., September 3, 1954.—This is an appeal from an order of the Secretary of Revenue suspending appellant's motor vehicle operating privileges. In compliance with the mandate of the Supreme Court (Commonwealth v. Strobel, 378 Pa. 84), this court has heard the case de novo and herewith makes its findings of fact from the record on appeal.

## Findings of Fact

1. Appellant, Alois J. Moes, also known as A. J. Moes, is a resident of Bucks County, Pa., his post office address being 317 Tohickon Avenue, Quakertown, Pa.

2. Appellant, who has been operating automobiles since 1916, was involved in an accident in the year 1934 in which he sustained a fracture of the skull.

3. On February 4, 1954, appellant was operating his automobile in a southerly direction on United States Route 309, north of Quakertown, at a speed of approximately 35 to 40 miles per hour when the car went off the right or westerly edge of the paving, dropping onto the berm several inches below the concrete surface, causing the vehicle to swerve out of control to the left across the highway, where it overturned causing appellant to sustain a brain concussion. No other person or vehicle was engaged or affected by the accident.

4. About two hours after the accident, while still in the hospital, an investigating officer questioned appellant who informed him that he had no explanation for the incident, having suddenly "blacked out" and did not know what had happened until he was in the hospital. He also mentioned to the officer the fact of his prior injury in 1934.

5. On April 15, 1954, the Secretary of Revenue issued an order suspending appellant's operating privi-

leges for an indefinite period on the ground that he was an "incompetent operator", the accompanying letter giving notice thereof stating, inter alia, as follows:

"Attached you will find a notification of the suspension of your operating privileges. This action is a result of information in our files to the effect that your present physical condition would make it hazardous for you to safely operate a motor vehicle on the highways."

6. On May 11, 1954, appellant filed his petition for the within appeal in this court, which appeal was made a supersedeas.

7. The suspension of appellant's operating privileges was ordered without a hearing before the Secretary of Revenue or his representative.

8. No violation of The Vehicle Code has ever been charged against appellant either by reason of the accident on February 4, 1954, or otherwise.

9. Apart from the statement attributed by the officer to appellant in the hospital shortly after the accident, there is no evidence whatsoever of appellant's incompetence or affliction with any mental or physical infirmities or disability which would render it unsafe for him to operate a motor vehicle upon the highways.

10. The statement of appellant to the investigating officer that he "blacked out", if made, which appellant does not recall, not only was given under circumstances casting doubt upon the accuracy thereof, but also was overcome as to the significance thereof by the other evidence in the case.

11. The Secretary of Revenue has failed to bear the burden of showing that appellant is incompetent to operate a motor vehicle.

### Discussion

Section 615(a) of The Vehicle Code, as amended, 75 PS §192, provides, inter alia, as follows:

"The Secretary may suspend the operating privilege of any person, with or without a hearing before the secretary or his representative, upon receiving a record of proceedings, if any, in which such person pleaded guilty, entered a plea of nolo contendere, or was found guilty by a judge or jury, *or whenever the secretary finds upon sufficient evidence:*

1. That such person is incompetent to operate a motor vehicle or tractor, or is afflicted with mental or physical infirmities or disabilities rendering it unsafe for such person to operate a motor vehicle or tractor upon the highways."

Since the order of the secretary in the present case was entered without a hearing, and hence necessarily was made under the above-quoted section of The Vehicle Code, we believe that the suspension was improper, even apart from any question of the merits. The letter accompanying the notice of suspension totally failed to indicate that the secretary made any "finding", and the statement therein that the order was the result of "information in our files" likewise totally failed to show that the suspension was based upon "sufficient evidence": Commonwealth v. Christman, 87 D. & C. 529. We see no reason whatsoever for the arbitrary procedure adopted in this case. Unless it be that the secretary (or his staff) were conscious of the weakness of the position taken, appellant could just as well have been afforded a hearing before the order was entered. The failure to permit appellant to state his side of the case certainly does not commend itself to any inferences favorable to the order appealed from, even if legally proper.

On the merits, as developed in this court on appeal, there is no doubt but that the only question involved is whether or not appellant was subject to lapses into unconsciousness and hence a hazard not only to others

but also to himself if permitted to operate a motor vehicle upon the highways.

On this subject the secretary offered no evidence whatsoever except the statement of the investigating officer that appellant had informed him, two hours after the accident while appellant was in the hospital suffering from a brain concussion (from which he was not discharged until the morning of the second following day), that he "blacked out" before the accident and did not know what had happened and, apparently, also mentioned the fact that he had had a prior accident in 1934 in which he had sustained a head injury. This was apparently the sole "information in our files" upon which the suspension was founded. No medical testimony or any other evidence on the subject was presented in support of the order.

On the other hand appellant, while not denying the statement attributed to him in the hospital, testified that he had no recollection of making it and, in fact, had suffered no ill effects subsequent to his convalescence from the injury sustained in 1934. He denied that he was subject to or ever had blackouts, fainting spells or other periods of unconsciousness resulting from that accident or from any other cause. Furthermore, he gave a reasonable explanation as to the manner in which the accident immediately in question occurred. As he was being overtaken by another car approaching him from the rear, which he observed in his mirror, he pulled to the right side of the highway, went off the edge of the paving and dropped several inches to the berm and thereupon lost control.

Appellant also testified as to the nature of his every day occupation as a painter and "handy man", consisting on many occasions of ascending high ladders, scaffolding and steeply-pitched roofs, all of which would be inconsistent with his alleged lack of control of his faculties. Furthermore, although driving a car

for almost 40 years and traveling about 5,000 miles per year, except for the two accidents herein mentioned, appellant has neither been involved in any other vehicular mishaps nor been charged with violation, at any time, of the various provisions of The Vehicle Code.

Appellant was corroborated by the testimony of a physician to the effect that upon examination on three occasions since the suspension, no evidence of any infirmity or disability was apparent. The physician testified that appellant appeared to be a normal person, with normal vision, hearing and reflexes. He also testified that in his opinion appellant was competent to operate an automobile. In answer to a hypothetical question by the court based on the assumption of a concussion from the prior accident in 1934, he replied that it would not be likely that appellant would now have periods of unaccountable unconsciousness as a result thereof. He further stated that even assuming that appellant did "blackout" on the occasion in question, it would be no more likely that he would suffer a recurrence thereof than that he would not. He also expressed an opinion that as a result of the accident of February 4, 1954, it would be possible that appellant would not recall what transpired for a few hours thereafter, thus giving some credence to appellant's failure to recall the statement attributed to him in the hospital. The evidentiary value of that admission, therefore, loses most, if not all of its weight.

On this state of the record, we find that the Secretary of Revenue has failed to bear the burden of proving the incompetence of appellant and therefore the order of suspension was unlawfully entered and should be vacated.

### Order

And now, September 3, 1954, it is ordered that the within appeal be sustained, that the order of the Secre-

tary of Revenue of April 15, 1954, suspending the operator's license of appellant, Alois J. Moes, also known as A. J. Moes, indefinitely, be and hereby is vacated, overruled and reversed, and that appellant's operator's license be reinstated.