## Commonwealth v. Horn

*Samuel Glantz*, for Commonwealth.

*Barrett and Monroe*, for appellant.

SATTERTHWAITE, J., July 5, 1957.—As required by decisions of the Supreme Court (Commonwealth v. Strobel, 378 Pa. 84), we make the following findings of fact from the hearing de novo and argument thereon in this appeal from the suspension of appellant's operating privileges by the Secretary of Revenue.

### Findings of Fact

1. Appellant, Robert L. Horn, is a resident of Bucks County.

2. On January 22, 1957, appellant was the operator of one of two cars involved in a nonfatal accident at the intersection of "A" and Clearfield Streets, Philadelphia.

3. On January 23, 1957, the day after the accident, appellant's operating privileges were suspended indefinitely by the director of highway safety acting for the Secretary of Revenue of the Commonwealth.

4. Said suspension was ordered personally by the director of highway safety because of "tremendous newspaper publicity" and telephone calls from undisclosed persons relative to the accident.

5. Said suspension was ordered without a hearing by the Secretary of Revenue or his representative and without any notice of, or opportunity for, such a hearing prior thereto.

6. In the notice forwarded to appellant of the suspension, the sole reason therefor was stated to be: "Involved in an accident."

7. The record discloses no conviction, or even pendency, of any misdemeanor or manslaughter charges against appellant in the commission of which a motor vehicle was used.

8. On February 21, 1957, the within appeal to this court was filed and made a supersedeas. A hearing was held thereon on March 29, 1957, and the case was subsequently argued before the court en banc on the record so made on May 20, 1957, the first term of argument court held a sufficient time after the transcript of testimony had been filed to permit counsel to prepare therefor.

## Discussion

The suspension in this case was totally unauthorized in law, and for that reason alone, without regard to the possible abstract desirability thereof, it must be reversed and vacated. There simply is no authority therefor on the reason assigned, and we hold that in

this proceeding that is the only question with which we can be concerned.

Section 615 of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §192, sets forth the basis upon which the Secretary of Revenue is empowered to suspend operating privileges. Nowhere therein is he authorized to order a suspension, whether with or without a hearing, merely because an operator be involved in a nonfatal accident. We fail to see how the fact that he or his staff may have been subjected to pressure by "tremendous newspaper publicity" or otherwise can enlarge the powers confided in him by the legislature. Moreover, even if he had the power so to act, the admission that he exercised such power on the basis of collateral and extralegal complaints certainly does not create any inferences in his favor. When it appeared that similar considerations influenced the lower court's affirmance of a license suspension in Commonwealth v. Herzog, 359 Pa. 641, its decision was sharply criticized by the Supreme Court, speaking through the present Chief Justice, at page 644:

"The court's action in such regard amounted to a denial of the full, fair and impartial hearing which is an inherent and unalienable right of our Anglo-Saxon legal heritage and which our constitutional guarantees are designed to safeguard and protect."

It is true that under certain circumstances the secretary does have power summarily to suspend an operator's license under the express provisions of the law. Thus, for grounds specified in section 615(a) of The Vehicle Code, as amended, 75 PS §192, he may enter such an order, without as well as with a hearing. But such authority is limited to the causes therein enumerated, to wit, incompetency to operate, *conviction* of, or forfeiture of bail for, a misdemeanor in the

commission of which a motor vehicle was used, *conviction* of manslaughter resulting from the operation thereof and cases of bribery or other fraud in the examination for an operator's license. None of these circumstances appear in the instant case. So far as the record discloses, there are no misdemeanor charges even pending against appellant, let alone any convictions thereof. With respect to his competency as an operator, apart from the fact that no challenge thereto was made in the notice of suspension, it is well established that a withdrawal of his privileges because of infirmities or disabilities must be predicated upon a finding thereof *"upon sufficient evidence"*, in the words of section 615(a) : Commonwealth v. Christman, 87 D. & C. 529; Moes Appeal, 1 D. & C. 2d 802. No such evidence appears in this record. The fact of involvement in an accident is not proof of incompetency as a driver: Bahry License, 1 D. & C. 2d 277. Indeed, competency in the present connection cannot be determined even by considering whether or not a particular accident was the fault of the subject operator: Commonwealth v. Smail, 366 Pa. 1.

Notwithstanding that his real position was a carefully guarded secret and completely undisclosed (despite requests from appellant's counsel prior to the hearing and by the trial judge at the hearing) until the argument on May 20, 1957, a period of four months after the suspension and well over a month after the hearing in this court, the secretary now argues that the suspension was justified under section 615(b) (2) and (3), in that appellant was guilty of reckless driving at the time of the accident and also had failed thereafter to file an accident report relative thereto. It may well be that appellant's privileges should be suspended upon either or both of these grounds upon due compliance with the statutory requirements therefor. However, we believe that these matters are not

properly before us in *this* proceeding and therefore we express no opinion thereon.

In the first place, appellant has not at any time heretofore been called upon to defend against such charges and, since they were belatedly raised long after the hearing had closed, in fact has had no opportunity to meet them. It is no answer to this deficiency to say, as we understand the secretary to do, that appellant could have had a departmental hearing *after* the suspension order and upon his surrender of his license card. Such, in effect, would amount as a practical matter to a denial of his right to appeal to this court. Compare Commonwealth v. Christman, 87 D. & C. 529, 531.

Secondly, we believe that the issues for disposition on appeal from a license suspension must necessarily be confined to those fairly raised by the particular cause or causes assigned in the order of the secretary itself. Such a conclusion seems implicit in many of the reported decisions involving this type of appeal. Thus, in Dieter License, 76 D. & C. 181, the suspension was entered under section 615(a)(2) for conviction of the misdemeanor of obstructing an officer in the making of an arrest, " 'in the commission of which a motor vehicle was used'." It appeared on appeal that the subject licensee was merely a passenger and not the operator of the vehicle when he interfered with the officer's arrest of the actual operator, and that the conviction was under an indictment based on The Penal Code and not The Vehicle Code. The court ruled that the misdemeanor was not one involving the use of a motor vehicle and vacated the suspension. The court further expressly refused to uphold the secretary's order under section 615(b)(2), which authorizes a suspension for infractions of the motor vehicle laws, despite the argument that appellant had been shown by the evidence necessarily and additionally to

have violated section 1213 of The Vehicle Code, 75 PS §743, which makes it a misdemeanor to interfere with a peace officer in the performance of his duties under the code.

In Kuntz's Appeal, 77 D. & C. 526, the license was suspended for incompetency. Since the only evidence thereof was a series of speeding and improper passing violations, the court felt bound to sustain the appeal, but suggested that the secretary issue a new suspension order, based on the specific violations. A like result obtained in McQuaide License, 7 D. & C. 2d 686. Similarly, in Bahry License, 1 D. & C. 2d 277, in an appeal from a suspension on the ground of incompetency, this court pointed out that the fact of the accident which provided the occasion for the order appealed from was not sufficient in itself to justify such action, even though the collision might have resulted from a violation of The Vehicle Code in failing to yield the right of way, since such violation was not charged against the operator.

The instant problem was squarely raised in Brown License, 3 D. & C. 2d 180. There the secretary sought to justify a suspension on the stated ground of incompetency by proving repeated violations of the code. The Montgomery County court, through Judge Corson, held the evidence insufficient to justify the suspension for the reason alleged, and further added, at page 184, as follows:

"It may be argued, however, that upon an appeal such as this, the case is heard de novo, and if appellant's license had been suspended for alleged violations, then this court could consider such alleged violations. Since, however, the license was suspended for incompetency, and since the alleged violations do not justify a finding of incompetency as that word must be construed under The Vehicle Code, we feel that the appeal must be sustained."

The third reason for our belief that the delayed grounds now relied upon by the secretary are not presently available to him is that no hearing was held by him thereon, nor any opportunity for such a hearing provided, prior to the order appealed from. Suspensions for violation of The Vehicle Code or for failure to report an accident are authorized only by subsection (*b*) of section 615, the opening clause of which provides as follows:

"(b) The secretary may suspend the operator's license or learner's permit of any person, *after a hearing before the secretary or his representative*, whenever the secretary finds upon sufficient evidence: . . ." (Italics supplied.)

This language is especially to be contrasted with that used in subsection (*a*) which empowers the secretary to suspend operating privileges on the different grounds therein specified, either with or without a hearing. Particularly in view of such contrast, which would otherwise be of no effect whatsoever despite the unambiguous declaration of legislative intention, we believe that the very power to suspend a license under subsection (*b*) must be considered as limited or withheld until the prescribed hearing be had before the secretary or his representative, and we so hold.

Under this statutory directive, we feel compelled to disagree with the argument that the failure to give appellant such a hearing was merely an administrative irregularity which in this case was rendered of no moment (1) by the opportunity for a departmental hearing *after* the suspension order section 615 (*h*), and also (2) by the de novo consideration of the case on appeal in this court.

There is clearly no merit to the first facet of this position. As already noted, to hold that a later hearing was sufficient would for all practical purposes effec-

tively deny the right of appeal. Moreover, section 615($h$) is not an enabling provision, but rather is directed solely to the procedure which the secretary is to follow in effecting a suspension under the preceding subsections thereof. It requires that official to give notice of the suspension to the operator involved "and afford him an opportunity of a hearing before said secretary or his representative, provided such hearing has not already been held." If the suspension legally be entered without a hearing, by authority of subsection ($a$), for example, then under this provision an opportunity for a hearing thereafter must be provided. On the other hand, if the very authority for the suspension itself be conditioned upon a prior hearing, as is expressly required for causes enumerated under subsection ($b$), then subsection ($h$) does not negative or cancel out such condition. It has no effect whatsoever upon the question of necessity for the prior hearing; if one be specified, and such legislative mandate be observed and complied with, or at least the opportunity therefor be provided, then the proviso comes into operation and there is no occasion for a post-session hearing. Compare Commonwealth v. Kohan, 385 Pa. 264. Section 615($h$), therefore, has no bearing upon the question presently involved.

On the second point of the secretary's argument, we have no quarrel with the proposition that a court of common pleas, on appeal from a suspension order, has the duty under section 616 of The Vehicle Code, as amended, 75 PS §193, to consider the case de novo and to determine therefrom, anew and independently, whether or not the license should be suspended. We have uniformly carried out that principle. See, e. g., Soens' Automobile License Case, 5 Bucks 293, 295, and Riley Automobile License Case, 6 Bucks 48, 50, and our prior decisions therein respectively cited.

Furthermore, we are neither able nor desirous of disagreeing with the pronouncements of the Supreme Court that the consideration of a case de novo by the court on appeal may overcome the lack of due process which might otherwise result for certain types of procedural irregularities in the hearings before the secretary or his representative: Commonwealth v. Cronin, 336 Pa. 469, 474 (failure to permit confrontation and cross-examination, at the departmental hearing, of the police officer who charged the violation which led to the suspension); Commonwealth v. Walkinshaw, 373 Pa. 419, 422-23 (failure to provide a hearing where the suspension had been ordered because of the operator's refusal, after notice, to appear for a special examination of his driving ability). Compare Albert Appeal, 372 Pa. 13, 22 (failure of a board of education, in a hearing against a school teacher on charges seeking her dismissal because she was a Communist, to permit her to present evidence relative to the tenets of the Communist party).

However, in none of these cases was there any avoidance or refusal to abide by a positive direction of the legislature as contained in the very statutory authority for the administrative action under challenge. The holding of a hearing by the secretary, where required, and his finding upon sufficient evidence of the relevant violation or other ground for suspension, are mandated elements of the legislative scheme for the withdrawal of license privileges: Commonwealth v. Funk, 323 Pa. 390, 397. In the Walkinshaw case, no hearing was provided for by law in the factual situation presented; in the Cronin and Albert cases, the hearings prescribed by law were in fact held and the objections went to matters that occurred in the course thereof. The Albert case is certainly not authority for the proposition that a professional school employe

may be dismissed without the *prior* hearing by the board of school directors required by section 1127 of the Public School Code of March 10, 1949, P. L. 30, 24 PS §11-1127, merely because the teacher would have the right to a de novo hearing on an ultimate appeal to the court of common pleas under section 1132 thereof, 24 PS §11-1132. In fact, it is established that the law is to the contrary: Swink's Case, 132 Pa. Superior Ct. 107. So, too, in connection with the analogy of an appeal from a judgment of a justice of the peace mentioned in the Cronin case, it may well be that technical irregularities in the proceedings before that official are not available at a hearing on the merits in the reviewing court, but we know of no case which holds that challenges to the jurisdiction or the very power of the justice to act in the proceeding are likewise so avoided. Compare Vichosky v. Boucher, 162 Pa. Superior Ct. 598.

In conclusion, we believe that the secretary's arbitrary and unauthorized action in this and other similar cases is likely to work injustice, not only to the particular operators directly involved, but also to the general public. By deliberately flouting the limitations upon his very authority to act at all, the secretary, on the one hand, may compel unnecessary appeals to the courts with the resultant inevitable delays in the timely and appropriate enforcement of the sanctions which should be imposed against an operator who, it would easily be demonstrated in the legally approved manner, was irresponsible or unfit for specific reasons to enjoy the driving privilege, or, on the other hand, may allow the lynching spirit of mob hysteria to replace his exercise of a just discretion in judgment of one who in fact is innocent and has never had the opportunity to meet the supposed charges against him. In the instant case, if there exists good cause for the suspension of appellant's license, the secretary should have indicated the same from the first and followed the

orderly procedures prescribed by law conscientiously to carry out the responsibilities resting upon him in that connection, rather than attempting to arrogate legislative powers to change the law which he obviously does not possess, and then shifting the responsibility for the exercise of his administrative discretion to the courts in the appeal which must inevitably follow such a departure. In short, his apparent impatience with the time lapses which must necessarily be inherent in the statutory scheme, possibly coupled with the human tendency to bow to the pressure of public opinion and to avoid the necessity for publicly justifying in a notorious case the decision which was his to make in the first instance, caused that statutory scheme completely to break down. If appellant's license should have been suspended, over five months' delay in effecting that result is attributable solely to the impetuous action of the secretary or his staff; if the driving privileges should not have been withdrawn, appellant obviously has been done an injustice by being compelled to resort to this court. As pointed out by Justice Barnes in Commonwealth v. Cronin, 336 Pa. 469, 474:

"If the licensees are given full opportunity to present their defense before the hearing inspectors, and to cross-examine their accusers asserting charges against them, many unnecessary appeals to the court from the action of the Secretary will be avoided."

### Order

And now, July 5, 1957, for the reasons stated in the foregoing opinion, the within appeal is hereby sustained and the order of the Secretary of Revenue suspending appellant's operator's license is vacated, without prejudice to the right of the Secretary of Revenue to proceed ab initio to take such other and further action as may be appropriate and legally warranted in the premises.