Marinelli  License

*Richard J. Audino,* for appellant.
*Perry L. Reeher,* for Commonwealth.

LYON, J., August 30, 1966.—A complaint filed before a justice of the peace accused appellant of driving in excess of the legal maximum speed limit. The fine and costs assessed by reason of this alleged violation were paid by appellant, and in due course, the Secretary of Revenue suspended his driving privileges. He questions on this appeal the right of the secretary to invoke this suspension.

On an appeal to the court of common pleas from a license suspension, it is the duty of the court to hear the case de novo and determine anew whether the operator's license should be suspended: Commonwealth v. Wagner, 364 Pa. 566, 73 A. 2d 676 (1950) ; Commonwealth v. Funk, 323 Pa. 390, 186 Atl. 65 (1936). It is incumbent upon the court hearing the appeal to dispose of each case under its own particular circumstances. Courts are not boards of clemency, but are bound by rules of civil procedure, and their decisions must be founded on firm jurisprudence, not fluctuating policy, and their decisions must be based upon the evidence presented: Commonwealth v. Moogerman, 385 Pa. 256, 122 A. 2d 804 (1956).

Payment of a fine without a hearing for violation of section 1002 of The Vehicle Code of April 29, 1959, P. L. 58, is not binding upon the court hearing an appeal from a license suspension: Commonwealth v. Aunkst, 37 Northumb. 41 (1965) ; Commonwealth v. Cooper, 10 Bucks 4 (1961) ; Case of Palmer Automobile License, 9 Bucks 100; Commonwealth v. Gilbert,

21 Beaver 182 (1959); Appeal of Caffrey, 22 Fayette 171 (1959). The suspension of an operator's license is not a sentence, nor is it, in the strict use of the term, a penalty. A license to operate a motor vehicle on public highways is a privilege and not a property right. Accordingly, a hearing on the question of suspension of an operator's license is not a criminal proceeding, but on the contrary is a civil procedure, in which the Commonwealth has the burden of proving the violation by a preponderance of the evidence: Levy Motor Vehicle Operator License Case, 194 Pa. Superior Ct. 390, 169 A. 2d 596 (1961); Commonwealth v. Harshman, 80 Dauph. 252 (1963); In re Roehrig Withdrawal of Motor Vehicle Operating Privileges, 55 Schuyl. 201 (1960).

To satisfy this burden, the Commonwealth at the hearing on appeal produced the testimony of Corporal Paul E. Faidley and Trooper Joseph C. Appel of the Pennsylvania State Police, as well as various documentary exhibits. The radar equipment, according to Corporal Faidley, had been checked for accuracy within 30 days of October 22, 1964, when the alleged violation occurred. He further checked it for accuracy on the date of the violation by utilization of the "Troop Car Test" and the "Tuning Fork Test", each of which was performed by him in the prescribed routine fashion immediately before the equipment was placed in operation.

The location of the radar check at the time of the alleged violation was described by the Commonwealth's evidence in generic terms only—on route 422 about two miles west of the City of New Castle; on route 422 east of the Caravan, a nightclub, but west of New Castle. Route 422 is a three lane public highway, properly posted with radar warning signs. Appellant's vehicle, according to Corporal Faidley, traveling at 68 miles per hour, passed through the radar screen shortly

4

after commencement of operation, and thereupon, appellant was stopped and arrested by Trooper Appel for exceeding the legal maximum speed of 50 miles per hour.

Appellant claims he was not guilty of the violation contended by the Commonwealth, but it appears from his testimony that he was not watching the speedometer, was not otherwise paying close attention to the speed of the vehicle, and has no specific or actual knowledge as a basis to support his opinion relative to the speed of the vehicle at the time of his arrest.

The Caravan nightclub, where appellant had spent a short time immediately prior to his arrest, is situate adjacent to the south line of route 422. Appellant had proceeded from the Caravan in an easterly direction on route 422, and he was on his way to his home in the City of New Castle. Two other vehicles had passed him by, and he had traveled less than a mile when he was stopped and arrested by Trooper Appel. At the time of the arrest, in response to appellant's question, Trooper Appel stated that the radar instrument was located at or near the Sunoco gasoline station. The fact that this statement was made is corroborated by the failure of Trooper Appel, who was then present in the courtroom, to take the witness stand to rebut this testimony. Instead, the Commonwealth's rebuttal consisted of testimony by Corporal Faidley. He placed the Sunoco gasoline station at a location on route 422 east of the Caravan. This rebuttal testimony, although not specifically, did by implication plainly admit the truth of Trooper Appel's statement that the radar equipment was located at the Sunoco gasoline station when the violation occurred. Appellant testified to a contrary location, and contended that since he proceeded from the Caravan directly east on route 422, that he could not possibly have operated the vehicle through the radar screen because the Sunoco gasoline station where

the radar was located is situate some distance to the west of the Caravan.

It is thus incumbent upon the court to determine from the evidence the actual location of the Sunoco gasoline station relative to the Caravan. In this respect, the court functions as a jury, which, under law, is not required when considering credibility of witnesses to discard its common sense or personal knowledge of the streets, buildings or other geographical landmarks in the area: Smith v. Bell Telephone Company of Pennsylvania, 397 Pa. 134, 153 A. 2d 477 (1959) ; 53 Am. Jur. §602, §656, §819 and §913.

Appellant's recollection relative to the location of this gasoline station agrees with that of the court. Further, appellant's testimony, under the circumstances here present, would appear to be more reliable. It appears that he was greatly outraged by the arrest for this alleged violation and it is, therefore, probable that in the interim between the date of arrest and the date of his testimony in court, he many times recounted in detail the events surrounding his arrest. His testimony is further buttressed by the fact that immediately before testifying, he again returned to the scene of his arrest for the purpose of being sure of the precise location of this gasoline station.

It is clear as crystal that both appellant and Corporal Faidley sincerely believed in the accuracy of their own testimony. The location of the Sunoco gasoline station is a tangible, visible fact which neither would intentionally misrepresent to the court. Also, Corporal Faidley is an able and devoted State Police officer who for many years has commanded the respect of the law-abiding, and is one who has enjoyed and earned the reputation of being wholly fair, and at all times scrupulously honest. But his testimony relative to the location of this gasoline station was undoubtedly dimmed by the passage of time. The alleged violation had occurred

on October 22, 1964, and he did not testify in court until nearly 15 months later, on February 28, 1966. In this interim, he was continuously on duty as a Pennsylvania State Police officer, and it is only reasonable to assume that he was probably involved in hundreds, if not thousands, of other violations. Nor does there appear any circumstance that would cause him to give, prior to the date of the court hearing, a second thought to the details of the alleged violation. Perhaps, for this reason, Corporal Faidley momentarily confused the Caravan with the Coach and Lantern nightclub, situate also adjacent to the south line of route 422, but some distance west of the Caravan. This gasoline station is located between the two nightclubs and would, therefore, be east of the Coach and Lantern, but west of the Caravan, as appellant contends. If this were so, and Corporal Faidley actually had in mind the Coach and Lantern but mistakenly termed it as the Caravan, his mistaken location of the gasoline station is then understandable. There is no gasoline station of any kind at or near the location described by Corporal Faidley.

The Commonwealth's evidence fails to convict appellant of the alleged violation for a second reason. Section 1002 (d.1) (1) of The Vehicle Code placed upon the Commonwealth the burden of proving that the equipment being used at the time of arrest was of a type approved by the Secretary of Revenue. To meet this burden, the Commonwealth introduced exhibit one, a document under the seal of the Commonwealth and signed by Harry H. Brainerd, the Commissioner of Traffic Safety. It states:

". . . annexed is a full, true and correct copy of the approval for use by the Pennsylvania State Police, Model S-2 Electronic Speed Meter and Model S-5 Electronic Speed Meter . . ."

The Commonwealth contended that section 1224 of The Vehicle Code made exhibit one admissible. But

appellant's objection to its admission was properly sustained. Only a certified copy, or a certified photostatic copy, of any record of the secretary is made admissible by section 1224, and plainly exhibit one was not such a record. Exhibit two is a certificate of radar speedometer accuracy, which states that the radar equipment used by the police officers was approved by the Secretary of Revenue. It was admitted into evidence under the authority of section 1002 of The Vehicle Code for the purpose of showing that the tests required by that section were made within the required time period, and that the radar apparatus was accurate or was adjusted for accuracy. But the Commonwealth may not prove by a certificate of radar speedometer accuracy that the apparatus was of the type approved by the Secretary, even though it is so stated in the certificate which is in evidence: Commonwealth v. Perdok, 411 Pa. 301, 192 A. 2d 221 (1963). Nor is the testimony of Corporal Faidley sufficient to establish this fact. Although on direct examination he testified that he was using a radar instrument of the approved type on the occasion of the alleged violation, it plainly appears from the crossexamination that he had no specific knowledge of whether the equipment was or was not approved by the secretary, but merely assumed that it was because he had received it through official channels. No motor vehicle operator can be convicted on evidence attained through the use of radar apparatus unless it be satisfactorily proven to be of the type approved by the secretary: Case of McClelland's License, 36 D. & C. 2d 378 (1965) ; Sabatino License, 31 D. & C. 2d 215 (1963) ; Appeal of Lucas, 11 Chester 346 (1963) ; Case of DeRewal Automobile License, 13 Bucks 255 (1963).

The court should always keep in mind the important and heavy responsibility imposed by the legislature upon the Secretary of Revenue in enforcing The Ve-

8

hicle Code, which was enacted for the benefit, care and protection of all people. But where the testimony of the Commonwealth is disputed, and there is credible, conflicting testimony, the hearing judge must make findings of fact and exercise his discretion concerning suspensions. The credible evidence before this court requires the conclusion that appellant was unjustly accused of this violation; and further, that the Commonwealth technically failed to satisfy its burden of proving that the radar instrument was of a type approved by the secretary.

ORDER

And now, August 30, 1966, the appeal is sustained, and the Secretary of Revenue is directed to restore appellant's license privileges forthwith.

Because the statutes make no provision for imposition of costs against the Commonwealth, it is ordered that the operator pay the cost of this proceeding. Exception is sealed for the Commonwealth.