## Williams License

*Peter C. Paul*, for appellant.

*Robert B. Cohen*, for Commonwealth.

GRIFFITHS, J., March 19, 1969.—On Independence Day in 1968, before most, if not all celebrations started, petitioner, who had been working late on July 3rd, in his downtown Philadelphia office, was, at about 4 a.m., stopped by an officer of the law.

The purpose of the apprehension was a violation of the speeding law. The ticket introduced into evidence stated "68 miles per hour", which counsel have agreed had been altered in the duplication process from "65 per hour". The limit, on the Roosevelt Boulevard Extension of the Schuylkill Expressway, where the infraction occurred, was 50 miles per hour.

The secretary, after hearing, according to the affidavit of the Commissioner of Traffic Safety, found that petitioner was travelling 65 miles per hour in a 50 miles per hour zone, and, he further found "upon the basis of information contained in said defendant's file *and* from facts adduced at the said hearing, a suspension of one (1) month (was) imposed". (Italics supplied.)

At the hearing before us petitioner testified that when the officer stopped him petitioner looked at his speedometer and that he was going 60 miles per hour. He further testified that at no time was he travelling beyond 60 or 61 miles per hour. The officer was not present at the hearing, counsel having agreed he would have testified petitioner was travelling at the speed of 65 miles per hour.

It was unfortunate we did not hear the officer's testimony in order that we might test his credibility under the circumstances of the case. Petitioner has impressed us as highly credible and we believe him. Accordingly we find as a fact that he was travelling 61 miles per hour and not 65 miles per hour as found by the secretary.

We also had offered into evidence a certification statement, by the Commissioner of Traffic Safety who had taken the affidavit above referred to, indicating that a search was made of the files in the department, and that there were no violations against this petitioner's record other than the instant one.

The affidavit, however, offered as P4, clearly indicates the secretary imposed the suspension not only because of the finding of "speeding 65/50 miles per hour zone", but also because of information contained in defendant's file. As a matter of fact there was no information contained in defendant's file. It was blank. His record was clean.

The court also finds from the relevant testimony that petitioner had travelled a total distance, on the Roosevelt Boulevard Extension of less than one and one-eighth miles before he was stopped. Further, we find the weather was clear; the road was dry; there was very little traffic at 4 a.m., and that there were four lanes for traffic in the direction petitioner was travelling.

Authority for the suspension is predicated upon sections 618 (b) (2) and 1002 (b) (8) of The Vehicle Code of April 29, 1959, P. L. 58, the violation having occurred on a state highway.

There is no doubt the secretary had the authority to suspend petitioner's license. The issue before us is whether he abused his discretion.

Had the violation not occurred upon a state highway under section 1002 (b) (8), but under subsec-

tions (4), (5), (6), (7), or (9) of section 1002 (b), the point system for driver education, testing and suspension would have been enforced and petitioner would have lost six points and have been required to attend driving school under 75 PS §619.1. There would have been no suspension.

Nor would there have been a suspension allowable for any of the following violations:

1. Driving 15 miles per hour over the speed limit on the Pennsylvania Turnpike, or 85 miles per hour;

2. Driving 75 miles per hour on a State highway where the speed limit is 60 miles per hour;

3. Driving 70 miles per hour on an unposted or rural road.

It was argued before us, and rightly so, that the only alternatives in this case the secretary had were to suspend the license, or not to suspend the license. This imposes on the secretary, however, the duty of carefully weighing the facts before him and determining which of these alternatives is the proper exercise of discretion.

We are familiar with the whole line of cases, including the most recent one of Lucchetti Motor Vehicle Operator License Case, 213 Pa. Superior Ct. 397 (1968), which hold that an operator's license may properly be suspended on the basis of unlawful speed alone.

There is, however, another touchstone that cannot be overlooked. It was more eloquently expressed by the late eminent Mr. Justice Musmanno, than this writer could do, when the late justice wrote in Commonwealth v. Moogerman, 385 Pa. 256, p. 263 (1956) ;

"No judge worthy of the robe would, for example, sustain the suspension of an operator's license upon evidence that the motorist was taking a seriously injured person to the hospital at the time he exceeded the speed limit. By the same token a patently dis-

proportionate period of suspension of operating privilege would not be allowed to stand on appeal. Nor would it be proper to deprive a motorist of his driving privileges if, by way of illustration, with an exemplary driving record behind him, he had on an occasion, without mishap, driven 55 miles per hour where the speed limit was 50 miles per hour. A judge is a judge and courts are established to do justice".

Moogerman was cited as authority by our Superior Court in Lucchetti as late as December 12, 1968.

In applying the abuse of discretion test, as set forth in Lucchetti, p. 400, we make the following findings and conclusion:

1. The secretary found the speed limit was violated by 15 miles, whereas the violation as found by the court was 11 miles.

2. The secretary, in addition, based his decision on information contained in petitioner's file. We do not believe this can be construed as innocuous. If the secretary did not mean something detrimental by this statement he would not have stated it as a "basis" for the suspension. The word "and", which we have underscored in the third paragraph hereof in quoting the secretary's exact language, is conjunctive.

3. "The practice of the Secretary to suspend an operator's license for 30 days upon establishing a second violation for speeding . . . ", (see Rabin Motor Vehicle Operator License Case, 196 Pa. Superior Ct. 555, 557 (1961)) has not been followed, this being a first, not second, violation. We realize this is not an absolute. It is, however, an indicated guide used together with all facets of the case.

4. Where on a four-lane highway, with the weather clear, the road dry, traffic light, at 4 a.m., petitioner "with an exemplary driving record behind him", does "on an occasion, without mishap", drive 61 miles per hour in a 50 miles per hour zone, in addition to find-

ings and conclusions 1, 2, and 3 above, we conclude the secretary, in suspending operator's driving privileges, has arbitrarily exercised his power and abused his discretion.

Accordingly, the petition is granted, the appeal is sustained and the order of the Secretary of Revenue is reversed and vacated.