## Anderson License

*E. Max Weiss*, for Commonwealth.
*Timothy McNickle*, for appellant.

ACKER, J., March 22, 1974.—This matter came for determination before this court upon a petition for appeal from license suspension.[1] Testimony was taken from which this court makes the following

### FINDINGS OF FACT

1. It was stipulated by and between the parties through their attorneys that defendant operates a small business in Grove City, Mercer County, Pa., known as Anderson Repairs on Erie Street Extension.

2. That it was desired to have an employe qualify as an official State inspector under the inspection station license held by petitioner, Jimmy Ray Anderson.

3. That a Pennsylvania State Policeman came to the inspection station and a motor vehicle owned by the wife of Jimmy Ray Anderson was brought into the

---

[1] Act of April 29, 1959, P. L. 58, sec. 620, as amended, 75 PS §620.

shop for inspection. That the vehicle had an inspection sticker upon it several days old allegedly done by Jimmy Ray Anderson and the vehicle had gone approximately 13 miles since the inspection.

4. That, in inspecting the vehicle, the applicant missed a defect in the muffler system which should have been discovered on inspection and should have been found by the inspection of several days previous.

5. That Jimmy Ray Anderson was charged with a violation of improper inspection for which he paid a fine.

6. That the trooper recommended to the Department of Motor Vehicles that a cease and desist should be issued in the form of a warning which, in fact, occurred.

7. That, without recommendation by the examiner, the Director of the Bureau of Traffic Safety, Department of Transportation, Julius A. Trombetta, in the exercise of discretion on November 1, 1973, directed that as a result of the guilty plea of January 18, 1973, the operating privileges of Jimmy Ray Anderson as a licensed vehicle operator were suspended for a period of 15 days, effective December 6, 1973, under section 618(b-2) of The Vehicle Code.

8. That petitioner is a self-employed mechanic with 24-hour tow and road service.

9. That petitioner services certain trucking companies on a regular basis, and is required to secure their trucks and bring them in for repair at any time.

10. That no one except a licensed motor vehicle operator can inspect a motor vehicle because of the requirement of test-driving it.

11. That as a part of repair work petitioner is required to test-drive the vehicle frequently at the completion thereof.

12. That of petitioner's total effort, approximately

one-third is towing, one-third is repair and one-third is inspection.

Issue: Whether the Director of the Bureau of Traffic Safety, Department of Transportation, abused his discretion under section 618(b)(-2) of The Vehicle Code in suspending petitioner's motor vehicle operator's license for a period of 15 days for an infraction of The Vehicle Code having nothing to do with the ability of petitioner to drive.

This case causes concern as to whether the punishment in any way fits the crime. This is particularly true when the punishment is not just the loss of operating privileges but, in effect, a substantial reduction, if not a loss, of the ability to earn a living for an offense completely unrelated to the ability to drive.

The Vehicle Code[2] gives discretion to the secretary to suspend operating privileges of any person after a hearing before the secretary, or his representative, whenever the secretary finds upon sufficient evidence that such person has committed any violation of the laws of this Commonwealth relating to vehicles.

The Vehicle Code grants to any person whose operator's license has been suspended the right to file a petition within 30 days thereafter for a hearing in the court of common pleas.[3]

Despite the broad discretion once granted to common pleas courts in a review through a de novo hearing, few categories of review have brought as many reversals as motor vehicle suspensions.[4]

The concept that a suspension by the secretary could be reversed simply because of economic hard-

---

[2] Act of April 29, 1959, P. L. 58, sec. 618, as amended, 75 PS §618.

[3] Act of April 29, 1959, P. L. 58, sec. 620, as amended, 75 PS §620.

[4] Commonwealth v. Wagner, 364 Pa. 566, 73 A. 2d 676 (1950),

ship upon defendant was dealt with adversely to those whose licenses had been restored by common pleas court in Commonwealth v. Emerick, 373 Pa. 388, 96 A. 2d 370 (1953). If the testimony is disputed as to the facts surrounding the reason for the suspension, as opposed to the so-called "equities" of the case, the common pleas courts have the right and duty to make findings of fact which, if supported by the evidence, will not normally be disturbed on appeal. In the case at bar, the parties agree that there was a violation of The Vehicle Code as to improper inspection and, therefore, the facts are undisputed in that most important consideration. However, Commonwealth v. Emerick, supra, does provide: "[If] there are submitted to him extenuating facts and circumstances, such as, inter alia, inadvertence, emergency, unintentional or accidental violations, including, among other reasons, economic hardship, if adequately supported by the testimony, the exercise of the hearing judge's discretion will not be disturbed": Page 397.

Economic hardship as such was specifically removed as a basis for reversal of the secretary in Commonwealth v. Emerick, supra, holding, page 400:

"This constitutes a manifest abuse of discretion by the hearing judge. Every time a person is convicted of a crime and is sentenced to prison, he and his family doubtless suffer an economic loss. But this constitutes no excuse for defendant's wrongdoing . . . Economic hardship standing alone is insufficient to excuse such a violation."[5]

An example of proper exercise of discretion by the lower court in reversing the secretary is Common-

---

[5] Our appellate courts have repeatedly reaffirmed that economic hardship in itself is insufficient to warrant a reversal of the discretion of the secretary in revoking operating privileges: Bureau of Traffic Safety v. Vairo, 9 Comm. Ct. 454, 308 A. 2d 159 (1973).

wealth v. Toole, 9 Comm. Ct. 202, 304 A. 2d 177 (1973), where defendant was a communications supervisor at the West Penn Hospital in Pittsburgh. In the early morning hours of this occurrence, she was notified by the hospital that a bomb threat had been received and she was hurrying to the hospital because the night operator was "frantic." This was found to be a sufficient emergency to permit discretion to be exercised by the lower court to reverse the suspension of operating privileges.

Nor may a common pleas court reverse the discretion of the secretary merely because defendant has had a similar punishment through some other jurisdiction. So, in Magida Motor Vehicle Operator License Case, 194 Pa. Superior Ct. 398, 169 A. 2d 602 (1961), the mere fact that defendant's license had been suspended for speeding in New Jersey did not permit the lower court to reverse the secretary for suspending the license in Pennsylvania for the same offense.

Nor is it required that the violation for which the suspension occurs be one directly dealing with the operation or ability to operate a motor vehicle. In Heffelfinger Motor Vehicle Operator License Case, 199 Pa. Superior Ct. 97, 184 A. 2d 367 (1962), the authority of the secretary to suspend operating privileges for a false and fraudulent application for a certificate of title to a motor vehicle was sustained. The court held that if the legislature had desired to restrict the secretary to suspension only in violations dealing with operation of a motor vehicle, it could do so. Rather, however, it followed the broad language "has committed any violation" of the laws relating to vehicles or tractors.[6] So, in the instant case, The

---

[6] Heffelfinger Motor Vehicle Operator License Case, supra, has been used as authority in a series of per curiam affirmations: Weckman Motor Vehicle Operator License Case, 216 Pa. Superior Ct. 740, 257 A. 2d 889 (1969); White Motor Vehicle Operator

Vehicle Code dealing with improper inspection of motor vehicles most certainly deals with vehicles or tractors and was within the discretion of the secretary.

Under the facts of this case, in view of the recommendation by the State Police Examiner and the equities of the case, if this court had the legal right, it would reverse, or at least modify, the decision of the secretary. In this court's opinion, the suspension is an inequitable and unfair act unrelated to the ability to drive. Tempting as it might be and as some courts have elected to do,[7] common pleas courts are constrained to follow the law as announced by the appellate court decisions interpreting the clear language of the legislature as used in the statute.

An excellent review from an appellate court's position of the course followed by many common pleas courts in Pennsylvania is found in Commonwealth v. McCartney, 2 Comm. Ct. 540, 279 A. 2d 77 (1971). There, defendant was driving on a Sunday allegedly for the purpose of securing tools and facilities to repair the brakes of his motor vehicle. His driving privileges had been previously suspended. The lower court, in the use of what it believed to be its discretion, reversed a one-year suspension by the secretary. This was reversed on appeal, saying, page 546:

"It is an erroneous concept that under the guise of a de novo hearing, a Common Pleas Court cannot only examine the facts of a case to determine whether the appellant actually deserves his suspension, but can additionally modify the suspension period promulgated by the Secretary. Knowing this full well, some lower courts, as this one here, simply reverse the

License Case, 213 Pa. Superior Ct. 738, 245 A. 2d 269 (1968); Jones Motor Vehicle Operator License Case, 213 Pa. Superior Ct. 763, 246 A. 2d 910 (1968).

[7] Commonwealth v. Williams, 41 D. & C. 2d 516 (1966), is an excellent example of that referred to.

suspension altogether. To do so, or to modify the suspension, infringes upon the discretion vested in the Secretary and amounts to a manifest abuse of discretion."

Quoting from Commonwealth v. Moogerman, 385 Pa. 256, 259, 122 A. 2d 804, 806 (1956):

"The decision of the county court in the case at bar, if unreversed, would tend to give ballast to the unsubstantiated notion that the courts may be called upon to function as ex officio pardon boards to mitigate the penalties which the Legislature empowered the Secretary of [Transportation] to impose under given conditions."

Further, that the statute ". . . does not confer jurisdiction on the court to determine whether suspension for a particular period, or suspension for a different period, is justified."

Wherefore, this court must sustain the action of the secretary. Hence, we enter the following

### ORDER

And now, March 22, 1974, it is hereby ordered and decreed that the action of the secretary in this case is sustained. The prayer of the appeal is denied.