## Commonwealth *v.* McCartney.

Argued April 22, 1971, before Judges CRUMLISH, JR., KRAMER and MENCER, sitting as a panel of three.

*Anthony J. Maiorana,* Assistant Attorney General, with him *William H. Robinson, Jr.,* Assistant Attorney General, *Robert W. Cunliffe,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for appellant.

*Rocco Viola, Jr.,* with him *Edward A. Tobias, Tobias & Viola,* for appellee.

OPINION BY JUDGE MENCER, June 29, 1971:

This is an appeal by the Commonwealth from an order of the Court of Common Pleas of Allegheny County reversing the order of the Secretary of Revenue (now the Secretary of Transportation) suspending the motor vehicle license of James F. McCartney for one year.

In appeals of this nature our duty is to examine the testimony to determine whether the findings of the court below are supported by competent evidence and to correct any erroneous conclusions of law, and the action of the lower court will not be disturbed on appeal except for manifest abuse of discretion. *Commonwealth v. Garman,* 361 Pa. 643, 66 A. 2d 271 (1949); *Commonwealth v. Emerick,* 373 Pa. 388, 96 A. 2d 370 (1953); *Commonwealth v. Halteman,* 192 Pa. Superior Ct. 379, 162 A. 2d 251 (1960).

Appellee filed a Motion to Quash on the ground that the appeal was not perfected until a date beyond the 30-day appeal period as set down in the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L.     (Act No. 223), 17 P.S. §211.502(a). An examination of the record reveals that the appeal was taken within the thirty-day period, and the Motion to Quash is therefore denied.

On February 9, 1968, appellee was involved in an automobile accident. Since he did not have liability insurance at the time, as required by law, he was required to post security with the Secretary. He did not do so and as a result his operator's license was suspended on October 4, 1968. This suspension lasted until March 6, 1969, when the Secretary restored appellee's operator's license to him. On November 17, 1968, appellee was apprehended for violating Section 624(6) of The Vehicle Code, Act of April 29, 1959, P. L. 58, as amended, 75 P.S. §624(6), for operating a motor vehicle while his license was under suspension, and sub-

sequently was found guilty in the Court of Common Pleas of Allegheny County of the misdemeanor of operating a motor vehicle while under suspension. A report of this conviction was certified by the Clerk of Court of Allegheny County and sent to the Secretary, who then implemented a suspension under Section 618(a)(2) of The Vehicle Code, as amended, 75 P.S. §618(a)(2), and imposed a one year suspension effective August 12, 1970. The appellee then appealed to the Court of Common Pleas of Allegheny County which reversed the Secretary's order. This appeal by the Commonwealth followed. This is not a Point System case.

The lower court's opinion gives the following statement of the circumstances of the period during which appellee was originally suspended and then arrested for driving while under suspension: "During this period repair of the brakes of the family car was absolutely necessary. The only day available in the busy schedule of the defendant for such repairs was Sunday. On November 17, 1968, Mrs. McCartney drove from their home in Ambridge to her place of employment in Wexford. Mr. and Mrs. McCartney were unable to find anyone to drive the defendant a distance of seven miles from her place of employment to his father's home where the tools and facilities for the repair of the brakes were available. The father of the defendant was unable to drive because of his health. The defendant set out to drive the seven miles from the place of his wife's employment to his father's home. The defendant drove only three miles of the total journey to a place where there was a routine spot check of vehicles being conducted by the Pennsylvania State Police. Although no violation of the Vehicle Code was involved in the defendant's being stopped, he was unable to produce a license; it having been suspended under the financial responsibilities of the provisions of the Vehicle Code. . . . Considering all of the circum-

stances of the offense, including extenuating facts and lack of aggravating circumstances, the Court is of the opinion that there was an abuse of discretion in ordering an *additional* suspension of one year." (Emphasis added.)

The "additional" emphasized in the court's last sentence quoted above indicates that it felt appellee had been penalized enough by his first suspension. Each case must be decided on its own merits, however, and if appellee had some grounds on which to attack his first suspension, he should have taken an appeal from that suspension. He failed to appeal and served the full term of the first suspension, and its legality cannot now be questioned nor can its merits be raised in an appeal from the second suspension. Under these circumstances it was improper for the lower court to consider what might have been a mitigating circumstance of the first suspension in setting aside the second. *See Klitsch Motor Vehicle Operator License Case,* 213 Pa. Superior Ct. 53, 58, 245 A. 2d 688, 691 (1968) and *Greer Motor Vehicle Operator License Case,* 215 Pa. Superior Ct. 66, 72-74, 257 A. 2d 317, 321-322 (1969).

The record reveals that appellee will not be able to continue his present work assignment without his operator's license, but the record is unclear as to whether he can continue his present employment in a capacity other than truck driver. Nevertheless, these words from *Klitsch, supra,* are apropos: "Stripped of the circumstances connected with the prior suspension, the sole ground relied on by the court below to reverse the secretary was economic hardship. The hearing court may not reverse the secretary solely on the ground of economic hardship and where it does it constitutes an abuse of discretion. Commonwealth v. Emerick, 373 Pa. 388, 96 A. 2d 370 (1953); Commonwealth v. Roher, 373 Pa. 409, 96 A. 2d 382 (1953)." 213 Pa. Superior Ct. at 59, 245 A. 2d at 691.

Before so holding in *Emerick, supra,* the Supreme Court did say, "And if the testimony so taken *de novo* is *undisputed* [as here], but there are submitted to him extenuating facts and circumstances, such as, inter alia, inadvertence, emergency, unintentional or accidental violations, including, among other reasons, economic hardship, if adequately supported by the testimony, the exercise of the hearing judge's discretion will not be disturbed". 373 Pa. at 397, 96 A. 2d at 374-375. (Emphasis in original.) Here, however, was an intentional violation, and although "repair of the brakes of the family car was absolutely necessary" and "The only day available in the busy schedule of the defendant for such repairs was Sunday", we do not think an emergency situation existed, and Mr. Justice MUSMANNO's words in *Commonwealth v. Kohan,* 385 Pa. 264, 267, 122 A. 2d 808, 810 (1956), are appropriate: "In the febrile life of today, everyone is busy—for good or ill—but an alleged busy-ness is no excuse for snapping one's fingers at the laws of the Commonwealth."

The lower court seeks to justify its consideration of "all of the circumstances of the offense, including extenuating facts and lack of aggravating circumstances" by the mere fact that it held a *de novo* hearing in the matter. True, a *de novo* hearing is proper. *See* numerous Pennsylvania appellate court cases cited in Annot., 97 A.L.R. 2d 1367, 1371-1372 (1964). But the test in a *de novo* hearing before the Court of Common Pleas is not whether the Secretary abused his discretion but whether, from the evidence before the court, the license of the appellant should be suspended. *Commonwealth v. Halteman, supra.* As the Supreme Court said in *Commonwealth v. Garman, supra,* "As far as the Vehicle Code is concerned, it provides, as already stated, that the court hearing the matter is to determine 'whether the petitioner is subject to suspension of operator's license'; that question must be answered by the

court either affirmatively, in which case it should sustain the suspension ordered by the Secretary, or negatively, in which case it should reverse the suspension and direct a reinstatement of the license."

It is an erroneous concept that under the guise of a *de novo* hearing, a Common Pleas court can not only examine the facts of a case to determine whether the appellant actually deserves his suspension, but can additionally modify the suspension period promulgated by the Secretary. Knowing this full well, some lower courts, as this one here, simply reverse the suspension altogether. To do so, or to modify the suspension, infringes upon the discretion vested in the Secretary and amounts to a manifest abuse of discretion. "Under such circumstances, the court has no authority to reverse the Secretary of [Transportation] solely because it considers the period of suspension to be a too severe penalty." *Magida Motor Vehicle Operator's License Case,* 194 Pa. Superior Ct. 398, 401, 169 A. 2d 602, 603 (1961). Thus, the Supreme Court in *Commonwealth v. Moogerman,* 385 Pa. 256, 259, 122 A. 2d 804, 806 (1956) has said, "The decision of the County Court in the case at bar, if unreversed, would tend to give ballast to the unsubstantiated notion that the Courts may be called upon to function as ex officio pardon boards to mitigate the penalties which the Legislature empowered the Secretary of [Transportation] to impose under given conditions."

Furthermore, the Superior Court has said, "Section 620 of The Vehicle Code, which authorizes appeals to the court from a suspension by the Secretary, gives the court no authority to alter, change or modify the suspension." *Anen Motor Vehicle Operator's License Case,* 194 Pa. Superior Ct. 379, 382, 169 A. 2d 600, 601 (1961). Commenting on an earlier version of Section 620, the Court in *Commonwealth v. Lebendig,* 75 Montg. 49, 51 (1958), said, "This section requires the court to decide

whether any suspension was justified, but does not confer jurisdiction on the court to determine whether suspension for the particular period, or suspension for a different period, is justified."

As just described, the law is clear on this matter, but many lower courts, faced with what seem to be forlorn circumstances, have either reluctantly applied it or refused to apply it altogether. At the heart of the matter are two things: (1) the "automatic" suspensions as set forth in the "Schedule of Suspensions and Revocations of Drivers' Licenses and Registrations (the so-called "schedule of penalties") imposed in most instances by the Secretary for violations of The Vehicle Code in cases not involving the Points System; and (2) even though the "Official Notification of Withdrawal of Motor Vehicle Privileges", sent to the offender by the Secretary, makes no mention of a hearing, and Section 618(h) of The Vehicle Code, 75 P.S. §618(h), says "afford him an opportunity of a hearing before said secretary or his representative", the Secretary takes the position that such a hearing will not be given unless the offender specifically asks for it. The result is that, out of preference or out of ignorance of the availability of a hearing before the Secretary, an appeal is taken directly to the Court of Common Pleas, and "the court which has heard the evidence is without jurisdiction to amend the particular order of suspension, although it might consider the order unduly severe or harsh. Yet as matters now stand, the order was entered by the secretary without the benefit of the possible tempering influence of the appellant's testimony. . . ." *See Commonwealth v. Lebendig, supra*, at 52. The question then is raised, as here, whether the Secretary, by automatically suspending a license for one year without a hearing, abuses his discretion.

The Superior Court, in *Hamsher Motor Vehicle Operator License Case,* 196 Pa. Superior Ct. 336, 175

A. 2d 303 (1961), which also involved a Section 624(6) violation, interpreted Section 618(h) this way:

"The court below held that under the above provision the secretary is under a duty to notify the operator of his right to a hearing. It also held that the Commonwealth's failure to notify Mrs. Hamsher was not rectified by the hearing de novo.

We do not agree with this construction. An operator whose license is suspended under §618(a)(2), *supra,* without a hearing, is entitled under §618(h), *supra,* to a prompt hearing upon request to the secretary, but the statute requires only notice of the suspension and not notice of the right to a hearing. As a matter of courtesy, it might be well for the secretary to include in the notice of suspension advice concerning the right to a hearing, but there is no more legal requirement that he do so than there is for him to notify a licensee of a right to appeal.

The licensee is presumed to know the law relating to her right of a hearing. By failing to ask for a hearing she waived her right to it. Even in cases involving criminal procedure and property rights, notice of the right to a hearing is not generally required. Here, we are concerned with a privilege where the constitutional requirements of due process are far less stringent.

Furthermore, even if the secretary would be required to notify the operator of her right to a hearing, under principles generally applied to the waiver of procedural defects, the error would be corrected by the taking of the appeal followed by the hearing de novo." 196 Pa. Superior Ct. at 339-340, 175 A. 2d at 304.

The last paragraph just quoted echoes the following in *Commonwealth v. Cronin,* 336 Pa. 469, 474, 9 A. 2d 408, 411 (1939): "It is our conclusion that the hearing de novo in the court below protected defendant against an arbitrary exercise of power on the part of the Secretary. It gave defendant his day in court, and with it

the right to present every available defense which he possessed against the suspension of the license. Regardless of whether he was accorded a proper hearing before the Secretary, it is certain that the hearing de novo remedied the infringement of any constitutional right of which defendant may have been deprived."

As to the "automatic" suspensions of the schedule of penalties, our own President Judge BOWMAN, while a member of the Dauphin County Court of Common Pleas, addressed himself to this problem in *Commonwealth v. Shontz,* 92 Dauph. 63 (1969). He first quoted the following from *Stout Motor Vehicle Operator Case,* 199 Pa. Superior Ct. 182, 188, 184 A. 2d 108, 110 (1962) : "From a justice standpoint it is much better to have uniformity than a great variety of penalties applicable to cases involving the same set of circumstances. [1] Such a schedule will prevent favoritism and will cause all violators to be treated alike. This will promote respect for law enforcement. It must be noted that the legislature did not specifically provide any periods of suspension, but permitted the secretary to exercise his discretion. We believe that he has exercised a wise discretion in promulgating the schedule of penalties above referred to."

Then he said, "We would add that not only does the adoption and use of a schedule 'prevent favoritism and cause all violations to be treated alike', but it also affords the standard or base upon which the Secretary's acts are to be tested in terms of abusing the discretion conferred upon him. If he were to ignore a schedule adopted by him in a particular case except where a rational basis and compelling reason exist for doing so (and none exists here), he would open himself to a charge of abuse of discretion. Favoritism is an abuse of discretion; adopting a schedule and applying the

---

[1] We interpret this to mean the same set of *legal* circumstances.

suspension prescribed by it are not." 92 Dauph. at 66. We agree.

From the foregoing it is quite evident how the lower court dealt with this case. As Mr. Justice Mus-MANNO said in *Commonwealth v. Moogerman, supra,* "It adopted a *parens patriae* attitude. It acted like a philosophical but indulgent parent who recognizes and deplores the mischief committed by his child but lacks the hardihood to discipline him for it." 385 Pa. at 259, 122 A. 2d at 806. This may seem harsh criticism, but the law has for some time been settled contrary to the position the lower court took.

Finally, the opinion of the lower court is not in accordance with the directions of the Supreme Court in *Commonwealth v. Etzel,* 370 Pa. 253, 258, 86 A. 2d 64, 66 (1952) : "It was incumbent upon the court below to make specific findings of fact from the evidence adduced at the hearing and, then, to enter a final order consonant with such findings. See order of reversal in Commonwealth v. Garman, supra, 361 Pa. at page 646, 66 A. 2d 271 ["The order of the court below is reversed and the record remanded for appropriate findings of fact and conclusions of law and for the entry of an order, based thereon, which sustains or reverses the action of the Secretary. . . ."]."

This leads us to comment upon how part of our Rule 23 should be interpreted in cases such as this one.[2] In light of our duty in appeals of this nature, as above stated, it is most important that we have before us the lower court's specific findings of fact so that we may intelligently "determine whether the *findings* of the court below are supported by competent evidence" and

---

[2] "***If the appeal relates to any order, judgment or decree for which the reasons do not already appear of record, the judge or other official below shall forthwith file of record a brief statement of the reasons therefor in the form of an opinion which shall be attached to the record and printed.***"

"correct any erroneous conclusions of law". We interpret the words of the Supreme Court in *Emerick, supra,* and in the two cases of *Commonwealth v. Strobel,* 375 Pa. 292, 100 A. 2d 43 (1953), same case, 378 Pa. 84, 105 A. 2d 152 (1954), to mean that findings of fact must be made both (1) where there is disputed or credible conflicting testimony, and (2) where there is undisputed testimony but extenuating facts and circumstances are submitted. Nonetheless, when the proper procedure is not followed, or is done in too vague a manner, we shall not hesitate to remand the record to the court below if we feel unable to properly fulfill our duty. *See Appeal of John Robert Horvath,* 1 Pa. Commonwealth Ct. 353, 274 A. 2d 776 (1971) and *Commonwealth v. Robert Frank Milspaw,* 1 Pa. Commonwealth Ct. 376, 274 A. 2d 777 (1971).

In the present instance, we shall not remand for findings of fact, conclusions of law, and consequent action by the court below, because neither the law nor the record admits of any justifiable reason to reverse the Secretary's suspension.

The order of the court below is reversed, and the order of suspension imposed by the Secretary of Revenue (now the Secretary of Transportation) is reinstated. A reinstated suspension shall be issued within thirty days.