**Stone License**

*Francis Fornelli* and *Cusick, Madden, Joyce & McKay,* for appellant.

*Edward Max Weiss,* and *Culbertson, Weiss & Schetroma,* for Bureau of Traffic Safety.

ACKER, J., February 1, 1973.—This 89-year-old former school teacher has appealed the indefinite suspension of her operator's driving privileges on the grounds that she is incompetent to drive. Although she was not given a departmental hearing which we deem to be required,[1] unless she first surrendered her license pursuant to a departmental policy, this court did conduct a full hearing upon this matter and, therefore, she is not harmed by that failure.

The event which triggered the eventual suspension was a recommendation for special driver's examination by a Hickory Township policeman following an accident in which petitioner was involved on August 13, 1972.[2] There, it appears Miss Stone passed over the imaginary centerline on a bridge on a narrow road in an area known as Pine Hollow causing contact between her vehicle and that of an oncoming car in the opposite direction. Because of the road being narrow and having guardrails along both sides, she passed beyond the scene, turned at the first available road and came back to the scene of the accident. Her degradations could not have been overly serious for the police officer did not elect to charge her with any offense as a result of that occurrence. She was, however, required to take both a physical examination and a test similar

---

[1] Collers License, 55 D. & C. 2d 554 (1972); Bell v. Burson, 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971).

[2] The fact that a driver may have been guilty of repeated violations of The Vehicle Code does not establish without more that he is an incompetent driver: Kuntz's Appeal, 77 D. & C. 526 (1951). Here, however, there was no evidence that petitioner had ever been involved in any automobile accident in 40 years of driving with the exception of that which caused the police officer to request an examination of August 13, 1972.

to that given to those making initial application for driver's license. She passed the physical examination without difficulty. Through a report by her physician, Dr. Francis L. Lally, we learn that from a medical standpoint he considered her as a safe and competent driver. Petitioner took the manual portion of the driving test and passed without error. She, however, failed, according to the officer, 4 of 10 questions in the oral examination. She, however, had not had a driver's manual prior to the testing and was given one by the officer at the conclusion of the examination with the right to return for reexamination. That reexamination, according to the officer, resulted in her missing five questions, two of which were repeat questions that she had previously missed. Miss Stone, however, testified that in her view of the officer's correction of her paper she missed but one and one-half questions and that the officer, in fact, commended her on how well she did and said that she was pleased with her performance. In any event, the Commonwealth has used the alleged failure of the oral test as the basis for concluding that she has a physical or mental disability which renders it unsafe for her to operate a motor vehicle upon the highway.[3]

The issue before the court is not whether the secretary abused his discretion but whether from the evidence before the court the license of petitioner should be suspended.[4]

At such a hearing, neither the action of the secretary nor the testimony taken before his representative is properly part of the record of the case.[5]

---

[3] Act of December 17, 1969, P.L. 376, sec. 1, 75 PS §618.

[4] Commonwealth v. McCartney, 2 Com. Ct. 540, 279 A. 2d 77 (1971).

[5] Handwerk Automobile License Case, 348 Pa. 263, 264, 265, 35 A. 2d 289 (1944).

The issue is whether in the exercise of the court's discretion and in the furtherance of justice the license should be suspended.[6]

In deciding whether the appellant's license should be taken, the court may consider the driving record of defendant.[7]

Incompetency has been defined as the general lack of capacity or fitness to drive.[8]

Two things are of particular note in the oral examination. The officer candidly admitted that he accepts the answer as given by the applicant even though it may well appear that the applicant did not fully understand the question. For example, one of the questions dealt with the speed which a person should travel at night with the correct answer being that a person should not travel faster than they can stop within the range of their headlights. Miss Stone answered, "I don't drive at night." This obviously was unresponsive to the question but nevertheless was marked wrong and counted against her. We believe that the department should play fair with its elderly drivers and instruct the police officers to repeat the question so that the applicant understands what is in fact being asked. Only then may a true determination be made of the knowledge of the applicant. It was obvious during the course of the hearing that, because of some difficulty in hearing, the petitioner was not comprehending the questions asked by her own counsel. However, as soon as she clearly heard the question, her remarkably alert mind produced the correct answers

---

[6] Commonwealth v. Cole, 350 Pa. 369, 371-72, 39 A. 2d 361 (1944).

[7] Commonwealth v. Gross, 9 D. & C. 2d 565 (1956); Brown's License, 40 D. & C. 2d 425 (1966).

[8] Harnish Suspension, 11 Lebanon 313 (1966); Commonwealth, Department of Revenue v. Sechrist, 9 Lebanon 271 (1963).

to the questions asked by the testing officer as if by the book. Second, that the questions which she allegedly failed deal generally with matters which do not show that she would be an incompetent driver or unfit. For example, when asked when she should report an accident she said, "When someone's injured or killed." She failed to add when the property damage is $100 or more. When asked how far she should park behind a stop sign, she answered, "Fifty feet." The approved answer is apparently 30 feet. Neither demonstrates unsafe driving.

Assuming for the sake of argument that the inability to answer the questions propounded would prove petitioner was mentally incompetent, we do not believe that this testimony remotely approaches such a conclusion.[9]

Although one is inclined to attribute senility and physical lack of coordination to a person age 89 simply because they have achieved that chronological condi-

---

[9] It is worthy to note the position of the courts concerning physical disabilities of some consequence where they have reversed the department in license suspensions: Moes Appeal, 1 D. & C. 2d 802, 4 Bucks 122 (1954) (where license was suspended for a suspected neurological disorder and the applicant had had but two accidents in 40 years); Dehrone License, 21 D. & C. 2d 542 (1960) (only one accident traceable to diabetes in 32 driving years); Lunetta License, 36 D. & C. 2d 571 (1965), (no accidents traceable to diabetes in 30 years); Hartman Appeal, 77 D. & C. 49, 24 Lehigh 437 (1951), (where the applicant had no blackout inducing attacks from an apparent neurological condition in nine years); Commonwealth v. Miller, 89 D. & C. 486 (1954); (where there had been 3 epileptic seizures in 11 years) Hennessy License, 32 D. & C. 2d 99 (1963), where a neurological specialist testified that a fainting spell was caused by gastro illness triggering a mild circulation defect of the brain which is uncommon in people of his age and that the likelihood of a recurrence of such a blackout is slight due to medication and that it is safe for the appellant to drive in his present condition.

tion, viewing this petitioner allays such fears. Her mental acumen in testifying and dexterity in coming to and from the witness stand was closely examined. This court would have had considerable difficulty making an estimate of the petitioner's age at anywhere near the testified birth date.

Wherefore, it is the conclusion of this court that the driving privileges of petitioner were improperly removed.

Hence, the following

### ORDER

And now, February 1, 1973, the suspension by the Director of the Bureau of Traffic Safety of December 11, 1972, until sufficient proof of competency is established, is reversed and the Bureau of Traffic Safety is directed to reinstate the driving privileges of Edith M. Stone.