## Commonwealth v. Yearsley

*Samuel J. Hapren,* for appellant.

*Maurice Levin,* for Commonwealth.

SUGERMAN, J., June 25, 1974.—Petitioner, Nancy Wister Yearsley, was convicted of speeding in violation of section 1002(b)(9) of The Vehicle Code,[1] and, as a result thereof, her license to operate motor vehicles was suspended for a period of 30 days. During the period of suspension, petitioner was again arrested and convicted of operating a motor vehicle while her license was suspended, in violation of section 624(6) of The Vehicle Code, 75 PS §624(6). Thereafter, upon receiving notification of such conviction, the Secretary of Transportation suspended petitioner's license for a period of one year pursuant to the authority contained in section 618(a)(2) of The Vehicle Code, 75 PS §618(a)(2). Petitioner appeals the latter suspension.

After hearing de novo, and in accordance with the mandate of Commonwealth v. Etzel, 370 Pa. 253, 86 A. 2d 64 (1952), and Commonwealth v. McCartney,

---

[1] Act of April 29, 1959, P. L. 58, as amended, 75 PS § 1002(b)(9).

2 Comm. Ct. 540, 279 A. 2d 77 (1971), we make the following:

## FINDINGS OF FACT

1. Petitioner, Nancy Wister Yearsley, resides in Highland Township, Chester County, Pa.

2. On December 1, 1972, petitioner was convicted of operating a motor vehicle while her license to operate motor vehicles as then suspended and not yet restored, a violation of section 624(6) of The Vehicle Code.

3. As the result of such conviction, petitioner's license to operate motor vehicles was suspended by the Secretary of Transportation for a period of one year pursuant to the authority contained in section 618(a)(2) of The Vehicle Code.

4. Petitioner's conviction of violating section 624(6) of The Vehicle Code resulted from her arrest while driving her automobile on November 5, 1972, when returning from Lincoln University in which institution petitioner was then enrolled as a student.

5. On the day of her arrest, petitioner believed that unless she presented herself for an examination at Lincoln University that morning, she would fail to pass the course in which the examination was given.

6. On the day of her arrest, petitioner's father was hospitalized some distance from petitioner's home, her mother was at the hospital attending her father, and her grandmother, at home with petitioner, was unable to operate her automobile by reason of mechanical failure, and was unable to drive petitioner's automobile because of unfamiliarity with the shifting mechanism, and, as a result, petitioner drove her own automobile.

7. Petitioner will suffer financial loss in the event her license is suspended for a period of one year.

## DISCUSSION

Petitioner readily admits that she operated her motor vehicle at a time when her privilege to do so was suspended, but she argues in mitigation and extenuation that such operation was necessitated by an emergency, thereby invoking the doctrine expressed in Commonwealth v. Emerick, 373 Pa. 388, 96 A. 2d 370 (1953), and recently applied in Commonwealth v. Toole, 9 Comm. Ct. 202, 304 A. 2d 177 (1973).

Petitioner here appeals, under section 620 of The Vehicle Code, 75 PS §620, the action of the Secretary of Transportation. The appeal is de novo, and The Vehicle Code requires the court "to take testimony and examine into the facts of the case, and to determine whether the petitioner is subject to suspension of operator's license." This provision of The Vehicle Code has been interpreted on numerous occasions as merely permitting the court to determine whether petitioner's license is subject to suspension. If it is, the action of the secretary must be sustained; if it is not, the court should reverse the action of the secretary and order reinstatement of the license: Commonwealth v. Garman, 361 Pa. 643, 66 A. 2d 271 (1949); Commonwealth v. McCartney, supra. The test in a de novo hearing is not whether the Secretary of Transportation has abused his discretion, but whether from the evidence before the court, petitioner's license should be, or is subject to suspension: Commonwealth v. Halteman, 192 Pa. Superior Ct. 379, 162 A. 2d 251 (1960).

Turning to the merits of petitioner's appeal, it is first of all clear that the court may not reverse the secretary solely on the ground of economic or financial hardship: Commonwealth v. Emerick, supra; Commonwealth v. Roher, 373 Pa. 409, 96 A. 2d 382 (1953); Klitsch Motor Vehicle Operator License Case, 213 Pa. Superior Ct. 53, 245 A. 2d 688 (1968); Commonwealth v. Mc-

Cartney, *supra*. Something in addition thereto is required, and Emerick, *supra*, outlines the general rule:

"Where the testimony of the Commonwealth . . . is *undisputed,* but there are submitted . . . extenuating facts and circumstances, such as, inter alia, inadvertence, emergency, unintentional or accidental violations, including, among other reasons, economic hardship . . . the exercise of the hearing judge's discretion [reversing the action of the Secretary] will not be disturbed."

Petitioner, arguing the existence of an emergency, has the burden of bringing her case within the limits of that word as the same have been drawn by the courts of this Commonwealth: Virnelson Motor Vehicle Operator License Case, 212 Pa. Superior Ct. 359, 243 A. 2d 464 (1968).

In Commonwealth v. Toole, supra, petitioner, a communications supervisor at a hospital was notified that the hospital had received a bomb threat, learned that, as a result, the night telephone operator at the hospital was "frantic," and thereupon hurried to the hospital, exceeding the speed limit. Finding on these facts an "emergency situation," the Commonwealth Court affirmed the hearing judge's action in reversing the suspension of Toole's license.

In Commonwealth v. Johnson, 27 Somerset 227 (1972), petitioner permitted his unlicensed son to operate his automobile because petitioner was "exhausted and uptight" and "not feeling well." The court, affirming suspension of petitioner's license, held that the petitioner was not presented with any emergency.

In Commonwealth v. Moogerman, 385 Pa. 256, 263, 122 A. 2d 804 (1956), the Supreme Court of Pennsylvania opined that "no judge worthy of the robe would, for example, sustain suspension of an operator's license upon evidence that the motorist was taking a seriously

injured person to the hospital at the time he exceeded the speed limit." Those conditions were met in Munafo License, 24 D. & C. 2d 463 (1961), where petitioner, while under suspension, was called by his mother and told that his father had suffered a fainting spell, the second in two weeks. Believing the situation to be an emergency, petitioner drove his father to his doctor's office, three blocks away. In reversing a suspension imposed upon petitioner for driving while under suspension, the court found the "emergency action" of petitioner justifiable, saying "one would hardly think that a son faced with such a situation could do anything less for an ailing father."

And in Jones License, 30 D. & C. 2d 472 (1963), the court, applying a similar theory, reversed the action of the secretary in suspending petitioner's license for driving while under suspension in the following circumstances: Petitioner's girl friend, while driving petitioner home, suffered an unusually severe and acute pain in her abdomen, later diagnosed as a kidney infection. Petitioner, in order to take the girl home and obtain medical attention for her, assumed operation of the vehicle. The court found these circumstances to constitute an "emergency."[2]

In Commonwealth v. Baker, 39 D. & C. 294 (1939), defendant, while under suspension, drove a truck three or four hundred yards in order to escape an altercation with a "band of ruffians." In reversing a suspension of defendant's license upon a charge of driving while under suspension, the court found the violation technical only, and further that defendant exercised good judgment in avoiding "what might have been more serious trouble in a breach of the peace and perhaps an assault and battery case."

---

[2] In Jones, supra, petitioner's violation occurred little more than an hour before the expiration of his suspension.

The word "emergency" is itself defined as "an unforeseen combination of circumstances . . . that calls for immediate action": Webster's New International Dictionary, (2d Ed.). An example of the application of the word to motor vehicle cases is found in Hosler License Appeal, 7 Centre 135 (1972), where defendant, while under suspension and returning from his employment at Penn State University in a vehicle operated by his wife, encountered a number of protesting students who began crawling on and pounding the vehicle. Defendant's wife became "somewhat hysterical," and in an effort to extricate the vehicle from the mob, defendant replaced his wife as the operator and drove the car to safety. The court, in reversing a suspension imposed by the secretary, held:

"We find the circumstances so impelling and convincing that we have no hesitancy in labeling the action of the Director of the Bureau of Traffic Safety as illegal, unreasonable and an abuse of discretion. The emergency was so imminent and we believe the circumstances justified defendant's conduct and, therefore, an injustice to allow this suspension to stand."

Nevertheless, in Commonwealth v. Hawley, this court, in an unreported decision at misc. no. 328-1973, affirmed the action of the Secretary of Transportation in suspending the license of petitioner for driving while under suspension upon the following facts: Petitioner, a college student, while under suspension, was "in an extremely depressed state of mind" because of the death of his brother in Vietnam and additional personal problems. Compounding such depression, petitioner, on the day of the violation, received word that he had "flunked out" of college. At the time of his apprehension, petitioner was driving with his possessions from college to his home. This court held that the circumstances surrounding petitioner's voluntary

and intentional act did not merit reversal of the suspension.

In the case at bar, it is undisputed that petitioner believed it necessary that she appear for an examination at Lincoln University, at the risk of failing the course; that her grandmother, with whom she had arranged transportation to school, was unable to operate her own vehicle because of mechanical failure, and was unfamiliar with and thus unable to operate petitioner's vehicle, and that petitioner's parents were in a hospital some distance away. Compelling as these circumstances may be, our analysis does not permit us to find them to approach the factual settings outlined in Hosler License Appeal, supra; Jones License, supra; Munafo License, supra; Commonwealth v. Baker, supra; and Commonwealth v. Toole, supra.

Couched in the language of the questions posed in Munafo, supra, at 465: Does this suspension work an injustice to this petitioner because of the fact that she operated in an emergency which, rightly or wrongly, she conceived to be of such a nature that immediate action was demanded and that she could not wait to secure a driver for her automobile, there being none available at the time, nor could she wait to procure other means of transportation? On this record, we cannot find that petitioner has carried the burden imposed upon her so as to permit us to answer affirmatively. We are, therefore, compelled to enter the following

## ORDER

And now, to wit, June 25, 1974, the appeal is dismissed, the action of the Secretary of Transportation in suspending petitioner's privilege to operate a motor vehicle for a period of one year is affirmed, and the said suspension is hereby reinstated.