## Commonwealth v. Johnson

*Maurice E. Levin,* Deputy Attorney General, for Commonwealth.

*Gary R. Block,* for appellant.

Sugerman, *J.,* April 17, 1975—Petitioner, Earl Henry Johnson, has appealed an order of the Secretary of Transportation suspending his privilege to operate a motor vehicle under the authority conferred by section 618(a)(1) of The Vehicle Code.[1] The suspension, effective August 31, 1974, and based upon petitioner's alleged physical incompetency, is for an indefinite period.

After hearing de novo to determine whether petitioner's privilege to operate a motor vehicle is subject to suspension (Section 620, The Vehicle Code, 75 PS §620; Commonwealth v. McCartney, 2 Pa. Commonwealth Ct. 540, 279 A.2d 77 (1971)), the court makes the following

---

1 Act of April 29, 1959, P. L. 58, as amended, 75 P. S. §618(a)(1).

## FINDINGS OF FACT

1. Petitioner, 27 years of age at the time of the hearing, and a resident of West Grove in this county, upon receiving notice on October 18, 1973, from the Director of the Bureau of Traffic Safety that he do so, submitted himself to Dr. Philip E. Kistler, of West Chester, for a physical examination.

2. Following such examination, Dr. Kistler, on October 24, 1973, notified the bureau on its form TS-121, "Convulsive Disorder Form", that petitioner has suffered from epilepsy, grand mal type, since childhood, that petitioner's last seizure had occurred a month earlier on September 19, 1973, that Dr. Kistler had treated petitioner for his condition since July, 1969, and that such treatment included dosages of phenobarbital and dilantin.

3. On November 13, 1973, following receipt of the convulsive disorder form as completed by Dr. Kistler, the Director of the Bureau of Traffic Safety notified petitioner that his privilege to operate a motor vehicle was suspended by reason of physical infirmity, effective December 18, 1973, for an indefinite period until petitioner provided sufficient proof of competency within the meaning of section 618(a)(1) of The Vehicle Code.

4. Thereafter, on December 31, 1973, petitioner was notified that a departmental hearing upon such suspension would be afforded him on January 23, 1974; for reasons not of record, on July 3, 1974, petitioner was again notified that a departmental hearing upon such suspension would again be afforded him on July 12, 1974; and while awaiting such hearings, petitioner's privilege to operate a motor vehicle was restored to him.

5. On August 1, 1974, petitioner was again notified by the Director of the Bureau of Traffic Safety that his privilege to operate was suspended indefinitely under the authority conferred by section 618(a)(1) of The Vehicle Code, effective August 31, 1974, until he established his competency to operate motor vehicles; and it is from such latter suspension that petitioner here appeals.

6. On November 20, 1974, petitioner's privilege to operate a motor vehicle was suspended under the authority of section 1404 of The Vehicle Code, 75 PS §1404, for the failure to post security as the result of an accident occurring on May 24, 1974; the record is devoid of any evidence that petitioner's epileptic condition was a contributing factor to the accident.

7. Petitioner at the date of the instant hearing had suffered no epileptic seizures since September 19, 1973; on that date, petitioner was discovered by Trooper Gain, of the Pennsylvania State Police, lying unconscious along the side of a public highway in this county, near his motor vehicle and bleeding from the head, suffering an epileptic seizure.

8. Dr. Kistler, in an opinion expressed in the convulsive disorder form, concluded that petitioner can be a safe and competent driver unless he "runs out of medicine," and that petitioner's condition is under "good control" so long as he ingests the medication prescribed for him.

9. Dr. Kistler further indicated that difficulty occurs if and when petitioner's supply of medication is exhausted; and the seizure of September 19, 1973, occurred by reason of petitioner's failure to ingest the prescribed medication for a period of two consecutive days prior to the seizure.

10. Petitioner is able to sense the onset of an epileptic seizure five to six minutes in advance, permitting him to prepare for the same before it occurs.

11. Petitioner suffered four epileptic seizures during the period July 1971 through September 19, 1973, each of which occurred by reason of his failure to ingest prescribed medication in correct dosages.

## DISCUSSION

As noted, petitioner's privilege to operate a motor vehicle was finally suspended by the Secretary of Transportation for an indefinite period commencing on August 31, 1974, under the authority conferred by section 618(a)(1) of The Vehicle Code, providing, in pertinent part, the following:

"(a) The secretary may suspend the operating privilege of any person . . . Whenever the secretary finds upon sufficient evidence:

"(1) That such person is incompetent to operate a motor vehicle or tractor, or is afflicted with mental or physical infirmities or disabilities rendering it unsafe for such person to operate a motor vehicle or tractor upon the highways."

Pursuant to the authority of this section, and various other sections of The Vehicle Code not here relevant, the Secretary of Revenue (now, Secretary of Transportation), on January 27, 1967, adopted regulations setting forth certain physical, mental and other standards to be met by persons in Pennsylvania before operators' licenses may be issued to them.

The regulations entitled "Physical, Mental and Other Requirements of Pennsylvania Drivers" became effective on January 27, 1967, were in force

at all times material to our disposition and are yet in force, and are in evidence. Section 1.A.(2) provides:

"A. An operator's license or learner's permit shall not be issued to any person under the following conditions:

". . .

"(2) . . . If suffering from epilepsy, unless medical proof is submitted that he has been completely seizure free from the illness for a period of at least two (2) years, with or without medication, based on standards established by the Medical Advisory Board of Pennsylvania."

The Commonwealth argues understandably that unless and until petitioner presents competent evidence that he has suffered no epileptic seizure for a period of two years, he is not entitled to operate a motor vehicle in Pennsylvania. The Commonwealth, by implication, further urges that such two-year period must, of necessity, commence at the earliest on September 19, 1973, the admitted date of petitioner's last seizure.

Petitioner argues to the contrary that his epilepsy is completely controllable with medication, and that the seizure occurring on September 19, 1973, resulted merely from his failure to take medication for two consecutive days. Building on that postulation, petitioner urges that inasmuch as he is seizure free under medication, he is a competent driver within the meaning of section 618(a) (1) of The Vehicle Code, and is not afflicted with a physical infirmity or disability rendering it unsafe for him to operate a motor vehicle upon the highways of the Commonwealth. The report submitted by Dr. Kistler supports the latter contention and there is no countervailing evidence.

It may well be that petitioner's epilepsy is subject to complete control if proper medication is administered. The plain fact is, however, that petitioner did suffer a seizure resulting in a loss of consciousness at a time when he was apparently operating a motor vehicle. That such condition presents an obvious hazard to persons using the highways, including petitioner, is too plain for extended discussion.

Petitioner does not attack the regulation as being unreasonable, and we do not find it so[2]. Rather, he argues that becuse his affliction is subject to control by the proper use of medication, the seizure of September 19, 1973, is of no significance. We do not so construe it.

It is clear that petitioner suffers from epilepsy. The regulations prohibit issuance of an operator's license to one so suffering unless, upon medical proof, such person has been seizure free for a period of two years. Section 618(a)(1) permits the secretary to suspend an operator's license already issued if he finds, upon sufficient evidence, that such person is afflicted with physical infirmities or disabilities rendering it unsafe for such person to operate a motor vehicle upon the highways.

This, the secretary did. Regardless of whether the secretary found petitioner "incompetent to operate

---

2 Petitioner touched upon, but did not urge, a resolution of the constitutional implications inherent in the regulations permitting a person suffering "blackout spells" to operate motor vehicles upon presenting proof of freedom of such blackouts for a period of six months, but in the case of epilepsy, two years. There is, in any event, insufficient evidence on this record to properly determine the issue and we do not reach it. See Bureau of Traffic Safety v. Huff, 10 Pa. Commonwealth Ct. 261, 310 A.2d 435 (1973), and, generally, Stottlemyer v. Stottlemyer, 224 Pa. Superior Ct. 123, 329 A.2d 892 (1973).

a motor vehicle" by reason of the epileptic seizure, or afflicted with "physical infirmities or disabilities rendering it unsafe" for petitioner to operate a motor vehicle by reason of the epileptic seizure, we find application of section 618(a)(1) and the regulations well within the parameters of authority of the secretary and a proper exercise of his discretion.

Finding no error, we must affirm.

## ORDER

And now, April 17, 1975, the appeal of petitioner, Earl Henry Johnson, is dismissed; the action of the Secretary of Transportation in suspending petitioner's privilege to operate a motor vehicle for an indefinite period until petitioner presents medical proof that he has suffered no epileptic seizures for a period of at least two years from September 19, 1973, is affirmed, and the said suspension is hereby reinstated.