## Commonwealth v. Gable

*William J. C. O'Donnell*, for appellant.
*Maurice Levin, Deputy Attorney General*, contra.

SUGERMAN, *J.*, May 9, 1975—Petitioner, Charles D. Gable, sole proprietor of Charles Gable's Garage, has appealed from an order of the Director of the Bureau of Traffic Safety suspending for a period of nine months the certificate of appointment granted him, permitting him to operate an official inspection station.

The suspension was imposed under the authority conferred by sections 819 and 834 of The Vehicle Code[1] for allegedly performing a faulty inspection, and the "improper keeping of records." After hearing de novo to determine whether petitioner's certificate of appointment is subject to suspension (section 819(b) of The Vehicle Code, 75 PS §819(b)) and in accordance with Commonwealth v. Etzel, 370 Pa. 253, 86 A. 2d 64 (1952), and Commonwealth v. McCartney, 2 Pa. Commonwealth Ct. 540, 279 A. 2d 77 (1971), the court makes the following

### FINDINGS OF FACT

1. Petitioner, Charles D. Gable, trading as Charles Gable's Garage, was awarded and pres-

---

1. Act of April 29, 1959, P.L. 58, as amended, 75 PS §§819 and 834.

ently holds, subject to suspension, a certificate of appointment bearing number 6571, granted by the Secretary of Transportation or his predecessor, permitting petitioner to operate an official inspection station at 74 Ridge Avenue, Phoenixville, Chester County, Pa., which inspection station petitioner has operated for a period of approximately 16 years.

2. In the course of performing inspections upon motor vehicles for the fourth inspection cycle, commencing November 1973 and continuing through April 30, 1974,[2] petitioner, in accordance with rules and regulations promulgated by the Secretary of Transportation, maintained Bureau of Traffic Safety form no. TS-431, "State Inspection Record" (hereinafter, "inspection record"), upon which he recorded data pertinent to each inspection performed.

3. Each inspection record contains 36 vertical columns, each column containing a printed column heading; such columns are divided by a series of horizontal lines, permitting inspection information to be recorded under each heading for 30 inspections.

4. Included among the column headings are: number of the respective inspection, date of such inspection, and inspection sticker serial number applicable to such inspection.

5. On the inspection record in evidence as C-6, 30 inspections are recorded, commencing with inspection number 231 and concluding with inspection number 260; the inspection numbers are recorded consecutively, and the date of each inspection is recorded opposite each inspection number chronologically,[3] commencing "2-7-74," recorded

2. Section 834(a) of The Vehicle Code, supra, 75 PS §834(a); 3 Pa.B. 2825.

3. Excepting the five inspections in issue, set forth in finding of fact no. 6.

opposite inspection number 231, and concluding "3-16-74," recorded opposite inspection number 260.

6. Although inspection number 249 reflects a date of 2-21-74, inspection number 250, 2-25-74, inspection number 256, 3-14-74 and inspection number 257, 3-14-74, the inspection record indicates that inspection numbers 251 through 255, falling between the foregoing numbers, reflect the dates "2-7-74," "2-7-74," "2-7-74," "2-7-74;" and "2-8-74;" as a result, it appears that the five inspections numbered 251 through 255 were performed earlier in time to most of the inspections recorded prior to those numbers on the inspection record at C-6, and the five said inspections do not, therefore, appear to be recorded in proper consecutive or chronological order.

7. The inspection stickers affixed to the five vehicles inspected at numbers 251 through 255, being sticker numbers 3376951 through 3376955, were not furnished to petitioner by the Department of Transportation until at least March 6, 1974, one month following the dates of inspection as appear on the inspection record opposite inspection numbers 251 through 255, and accordingly, could not have been affixed to the vehicles so inspected on the dates indicated.

8. The inspection record in question was examined by Trooper Petros, an inspection station examiner with the Pennsylvania State Police, and the apparent deficiencies thereon were reported by him to the Bureau of Traffic Safety.

9. On July 1, 1974, petitioner was notified by the Director of the Bureau of Traffic Safety that petitioner's inspection station "was not being operated in accordance with the Rules and Regulations governing Official Inspection Stations" in that a "report of June 24, 1974," apparently made and

filed by Trooper Petros, charged petitioner "with fraudulent keeping of records" (C-1).

10. Petitioner requested, and on July 24, 1974, was afforded, a departmental hearing to show cause why his certificate of appointment to operate an inspection station should not be suspended.

11. On August 14, 1974, following the said hearing, petitioner was notified by the Director of the Bureau of Highway Safety that his certificate of appointment was suspended for a period of nine months, effective August 14, 1974, "for performing a faulty inspection and improper keeping of records."

12. Such penalties were assessed in accordance with chapter 12, section 12.1 of the regulations (3 Pa.B. 2877) providing, inter alia, a six-month suspension for the first offense of faulty inspection, and a three-month suspension for the second offense of improper records.

13. Petitioner appealed the suspension so imposed, such appeal acting as a supersedeas of the order of suspension until disposition of the appeal.

14. Trooper Petros has neither questioned the owners of the motor vehicles bearing the five suspect inspection stickers, nor examined said stickers.

## DISCUSSION

It is at once apparent that the five offending inspections, being numbers 251 through 255, could not have been performed by petitioner on the dates indicated and inspection stickers bearing the reported numbers affixed to the inspected vehicles immediately thereafter, inasmuch as petitioner did not receive such inspection stickers from the Department of Transportation until at least 30 days following the dates upon which the inspections were performed.

Nevertheless, the Commonwealth points to no specific provision of The Vehicle Code[4] thus violated by petitioner, but rather, refers to three regulations promulgated by the Secretary of Transportation and asks the court to construe petitioner's conduct as in violation of such regulations.

The first regulation cited by the Commonwealth is found at chapter 5, "Official Inspection Requirements," section 5.13.B.1., 3 Pa.B. 2834-2835, providing:

"B. ANY DEVIATION OR CHANGE IN THE FOLLOWING PROCEDURE WILL BE CONSIDERED A FAULTY INSPECTION AND THE STICKER SHALL BE VOID.

". . .

"2. The sticker cannot be issued until the vehicle has been inspected and passed all requirements. The sticker will be issued immediately following the last step of the inspection, THE ROAD TEST."

If the inspections were performed on the dates indicated on the inspection record, the Commonwealth urges that the inspection stickers were not, and could not have been affixed to the vehicles

---

4. We note that section 819(b) of The Vehicle Code, 75 PS §819(b), permits the Secretary of Transportation to suspend a certificate of appointment if the business of an official inspection station in connection with inspection of motor vehicles "is being improperly conducted." Additionally, we note the provisions of section 819(f), proscribing the delivery of an inspection sticker to any person not entitled thereto under The Vehicle Code, as well as section 819(e), permitting the issuance of an inspection sticker only after the vehicle, upon inspection, has been found to conform to the requirements of The Vehicle Code, and section 819(h), requiring the owner of an official inspection station to file with the Department of Transportation such information relating to daily inspections as the secretary may require.

Finally, we note the provisions of sections 834(a), (c), (e), and (f), treating the same subject.

"immediately following" completion of the inspections, resulting in five "faulty inspections" within the purview of the regulation.

Next, the Commonwealth asserts that petitioner's conduct is in violation of chapter 5, section 5.14.A.8. of the official inspection requirements, 3 Pa.B. 2835, providing:

"8. Caution: Failure to properly record inspections, forward the record to the Inspection Division or to keep the records as required, can result in the suspension of inspection privileges. Fraudulent entries, deliberately misrepresenting an inspection, will be sufficient cause to suspend inspection privileges indefinitely."

The Commonwealth suggests that at the very least, petitioner failed to "keep the records as required," in that he failed to list the five offending inspections in proper sequence as apparently required by implication on the inspection record, and failed to "properly record inspections" for the same reason.

Finally, the Commonwealth urges that petitioner has violated chapter 3, section 3.1.A.6. of the official inspection requirements, 3 Pa.B. 2823, providing:

"A. Upon accepting appointment as an Official Inspection Station owner, the applicant has pledged himself to be responsible for the following:

". . .

"6. He will keep up-to-date inspection records at his inspection station, which will be available at all times for examination by the Police or an authorized employee of the Department."

Again, the Commonwealth argues that, inasmuch as the five inspections were apparently made at least two weeks prior to the time they were recorded by petitioner on the inspection record,

petitioner has failed to keep his inspection records "up-to-date."

In summary, then, the Commonwealth asserts that violation of the first-cited regulation constitutes a faulty inspection as to each of the five vehicles involved, and violation of the latter two regulations constitute the improper keeping of records.

Petitioner on the other hand, while admitting that he dated the five inspections as indicated on the inspection record, and affixed to the vehicles the inspection stickers bearing the numbers appearing on the inspection record, nevertheless asserts that the five inspections were actually performed in March, rather than in February, and the dates of the five inspections should have been recorded as having been performed on "3-7-74," rather than "2-7-74," and "3-8-74," as opposed to "2-8-74."

Petitioner additionally argues that the period of limitations, prescribed by section 1201(a) of The Vehicle Code, 75 PS §1201(a), and requiring as it does that *informations* charging violations of section 819 of The Vehicle Code, 75 PS §819, be brought within 15 days after the commission of the violation is discovered, has tolled any action against petitioner long before the Director of the Bureau of Traffic Safety took such action.[5] Petitioner also urges that the Secretary of Transportation may not delegate the authority to suspend certificates of inspection to the Director of the

5. No "information" is here involved, and the penalty provisions of section 819(h) of The Vehicle Code, 75 PS §819(h) have not been invoked. It is noted further that the director "took the first action" at bar when he notified petitioner on July 1, 1974, that a report dated seven days earlier, on June 24, 1974, contained information indicating that petitioner's inspection station was not being operated in accordance with the regulations of the Department of Transportation (C-1).

Bureau of Traffic Safety and that inasmuch as only the secretary may suspend, the purported suspension of petitioner's certificate of inspection as ordered by the Director of the Bureau of Traffic Safety is of no effect. In view of our disposition of petitioner's first contention, we do not reach these latter arguments.

Section 819(b) of The Vehicle Code, 75 PS §819(b), permits an appeal to the court of common pleas from an order suspending a certificate of appointment, and directs the court to "take testimony and examine into the facts of the case and to determine whether the . . . [petitioner] is subject to suspension of his Certificate of Appointment under the provisions of this act." Accordingly, the appeal requires a hearing de novo and, on the basis of the testimony presented thereat, the court must determine anew whether petitioner's certificate is subject to suspension, or should be suspended: Virnelson Motor Vehicle Operator License Case, 212 Pa. Superior Ct. 359, 243 A. 2d 464 (1968).

The burden of proof in such matters rests throughout upon the Commonwealth to establish by the fair weight and preponderance of the evidence that some violation of The Vehicle Code occurred which formed the basis of the suspension imposed: Commonwealth v. Keech, 12 Pa. Commonwealth Ct. 584, 317 A. 2d 322 (1974); Civitello v. Bureau of Traffic Safety, 11 Pa. Commonwealth Ct. 551, 315 A. 2d 666 (1974).

The test in a hearing de novo before the court of common pleas is not whether the Secretary of Transportation abused his discretion, but whether, from the evidence before the court, petitioner's certificate should be suspended: Commonwealth v. Halteman, 192 Pa. Superior Ct. 379, 162 A. 2d 251 (1960); Civitello v. Bureau of Traffic Safety, supra.

We are convinced after careful consideration of

all the testimony presented at bar and an examination of the Commonwealth's exhibits that petitioner inadvertently inserted the number "2" in the place of the number "3" when recording the dates he performed inspections numbers 251 through 255. Not only did petitioner so testify, but logic commands such conclusion.

We note, for example, that inspection number 250, about which there is no controversy, was performed on 2-25-74, and on that date, petitioner apparently used the last of his supply of inspection stickers. Commonwealth's Exhibit C-6, which is in fact form TS-436 (an order form for inspection stickers), indicates that on March 6, 1974, petitioner ordered a new supply of inspection stickers and affixed the first of the stickers issued in response to his order upon the next vehicle inspected, number 251. Four more such stickers, in numerical sequence, were affixed to the next four vehicles inspected, being inspections numbers 252, 253, 254 and 255. The next of such stickers, used in numerical sequence, was affixed to the vehicle inspected on 3-14-74, as inspection number 256, again not in issue here, and so on, through 3-16-74, the last entry on the inspection record.

Petitioner's mistake is easily understood in view of the fact that all inspections on the inspection record through inspection number 250, some 20 in number, were performed in February, from the seventh of that month through the 25th. A week then ensued when petitioner performed no inspections, and upon receiving a new supply of inspection stickers, performed inspection number 251 on March 7. When inserting the numerical designation for the month, he quite understandably inserted the number "2" to designate the month inasmuch as that number appears in all prior inspections on the entire inspection record.

It is evident that such is the only reasonable explanation unless one assumes that petitioner inspected the five vehicles at an earlier date but failed to affix inspection stickers to such vehicles until one month later. This is the inference the Commonwealth apparently wishes the court to draw. Such inference, however, may not reasonably be drawn in light of our examination of the 12 additional inspection records containing the required information for all vehicles inspected by petitioner for the period 11-2-73 through 4-10-74, in evidence as P-1.

Without extended discussion, we simply do not believe the regulations cited by the Commonwealth and upon which the secretary apparently predicated the instant suspension, were intended to be applied to the harmless inadvertences displayed by petitioner at bar. Although we must forego the strong temptation to recite the myriad of platitudes dwelling upon the propensities of man toward error, and further take little note of the quantity of erasers, eradicating fluids and erasable paper distributed annually in the commercial market, we perceive the cited regulations as requiring something more than inadvertence and harmless error in order to permit the secretary or his delegate to invoke the remedy of suspension.

There is no evidence extrinsic to the inspection records to indicate when the inspections were in fact performed, and no evidence at all to indicate the date upon which the inspection stickers were actually affixed to the inspected vehicles. There is no suggestion of fraudulent purpose; there is no evidence of any kind to permit us to conclude that the inspections were not properly performed and, in short, reason demands the conclusion that petitioner is not in violation of the regulations. Inasmuch as the suspension was based solely upon a

finding that such violations occurred, the order of suspension must be overruled and the action of the secretary reversed.

### ORDER

And now, May 9, 1975, the appeal of Charles D. Gable, trading as Charles Gable's Garage, is sustained; the action of the Director of the Bureau of Traffic Safety in suspending petitioner's certificate of appointment is hereby reversed; and the said certificate of appointment is hereby reinstated.